## No. 9898.

### DICKENS ET AL. v. BARNHAM.

Decided Nov. 8, 1920.  Rehearing denied Jan. 10, 1921.

Action against parents and child for personal injuries resulting from the latter's use of a deadly weapon.  Judgment for plaintiff.

### *Affirmed.*

### *On Application for Supersedeas.*

1. PARENT AND CHILD—*Liability for Damages.*  A father may be liable for the tortious acts of his minor child, on the ground that his own act in permitting the child to have access to some instrumentality potent for mischief is, in view of the child's want of capacity properly to manage it, the proximate cause of the injury.

2. TRIAL—*Questions for Jury—Negligence and Proximate Cause.*  In an action against a father for personal injuries inflicted by his minor son, the questions of negligence and proximate cause are for the jury.

3. PARENT AND CHILD—*Negligence—Damages.*  Under the rules of negligence a parent is liable for an injury resulting from his child's use of a deadly weapon, if he ought to have foreseen that the infant might use the weapon negligently, or in a manner dangerous to others.

*Error to the District Court of Boulder County, Hon. George H. Bradfield, Judge.*

Mr. JACOB S. SCHEY, Mr. JOHN F. REYNES, for plaintiffs in error.

Messrs. RINN & ARCHIBALD, for defendant in error.

MR. JUSTICE ALLEN delivered the opinion of the court.

THIS is an action to recover damages for personal injuries resulting from the alleged negligence of the defendants Lloyd Dickens, a minor, and William A. Dickens and Hannah Dickens, the parents of Lloyd Dickens. The plaintiff below recovered a judgment against two of the defendants, the father and the son, and such defendants have sued out this writ of error and apply for a supersedeas.

The plaintiff, Henry E. Barnham, was injured by a flying bullet, alleged to have been discharged from a rifle fired by the defendant Lloyd Dickens, who was at that time an infant of the age of eight years. The bullet struck the plaintiff about an inch in front of the right ear and passed through brain tissue and through the eye ball. It is not disputed that upon the occasion of the plaintiff's injury, Lloyd Dickens was carelessly and negligently firing an automatic repeating rifle, and that as a consequence of such conduct the plaintiff was struck and injured by a stray bullet. There is ample evidence to support the verdict as against the defendant Lloyd Dickens, and any question as to the sufficiency of such evidence, to sustain a judgment against him, does not merit discussion.

The main question to be determined is, Does the evidence support the verdict and judgment against the defendant William A. Dickens, the father of Lloyd Dickens?

The judgment against the father is sought to be upheld on the theory that the evidence shows that he was guilty of negligence in connection with the circumstance that the son obtained possession of the rifle, and ammunition therefor, and used the same with the result already noted, and that such negligence was the cause of the injury. As evidence tending to show such negligence, there was testimony to the following effect:

At all times herein mentioned, William A. Dickens and his family resided in a dwelling located a quarter of a mile distant from the city limits of Longmont, in Boulder Coun-

ty, and about a hundred yards from an extensively traveled public highway. The family consisted of a wife and five children, the latter being aged, respectively, about 14, 10, 8, 7 and 6 years. On the afternoon of May 11, 1919, Lloyd, aged 8, was left alone on the premises, as he had been at other times. It was on that occasion that the plaintiff was struck by a stray bullet, while he was walking on the highway above mentioned, and, as hereinbefore noted, the bullet came from a rifle fired by Lloyd.

The rifle in question was one purchased by William Dickens, Jr., another son, aged 14. It was purchased with the father's consent, about one or two months prior to the date of the accident. Some time after it was brought home, William, Jr. showed Lloyd how to load and discharge the rifle, and allowed him to fire it once. Prior to, and at the time that the rifle was purchased, the father and his son William kept upon their premises at their home another rifle which, on at least one occasion, was used by Lloyd. It was kept in a barn; was not concealed from Lloyd; and he knew it was there. For a time after its purchase, the new rifle was also kept in the barn. Then the father instructed William "to take it some place else" because, as Lloyd testified, "it was too good a gun to leave laying around in the barn." The following is the testimony of the father as to why the new rifle was not kept in the dwelling house: "Well, William got the gun and put it in the barn. I seen the gun there, and I says 'It is too dirty to keep a good gun there.' I says, 'Put it in a better place,' and he did, or at least the gun was removed, and I presume he took it away." The father entrusted the care of the new rifle entirely to his son William. The new rifle was placed in a bunk-house. Lloyd testified that he saw William "take it in there." He knew it was being kept there. The bunk-house was not locked. Lloyd and the other children sometimes played in it. When Lloyd was left alone at home on the afternoon of May 11, 1919, the bunk-house was unlocked and its interior was accessible to him. On that occasion he went into the bunk-house to look for the

rifle and to take it out.   He found the rifle on a shelf; at the same time he found three boxes of shells, the ammunition for the rifle, on the same shelf.   It thus appears that both the rifle and the ammunition were accessible to him, for he had but little difficulty in obtaining possession of the same.   The rifle was of a high power character, and capable of killing a human being at a considerable distance. Neither the rifle nor the ammunition was placed or kept where it could not be taken and used by the younger children in the family.   The father made no effort to learn how or where the rifle was kept; he simply allowed William "to take care of it."   He took no means to make the dangerous weapon inaccessible to the younger children except that, if we take his testimony, he said to William:   "Don't have any of the children shoot it or take care of it in any way at all."

It is not necessary to detail further evidence.   What has been hereinabove recited, together with reasonable inferences which may be drawn therefrom, is, in our opinion, sufficient to support a verdict and a judgment against the father, the defendant William A. Dickens.   The jury could find, from the evidence, that he was negligent and that his negligence was the cause of the injury to the plaintiff.   A father may be liable on the ground that his own act in permitting the child to have access to some instrumentality potent for mischief is, in view of the child's want of capacity properly to manage it, the proximate cause of the injury. 7 B. R. C. 33, note; 20 R. C. L. 627.

So far as legal principles are concerned, the facts of this case are analogous to those in *Salisbury v. Crudale,* 41 R. I. 33, 102 Atl. 731.   In that case a father left a loaded gun under a bed.   There, as in the instant case, the weapon was accessible to an infant son, and it was held that whether defendant was negligent in allowing his son to get possession of a loaded rifle, and whether such negligence was the cause of the injury, were questions for the jury.   The case approvingly quotes language found in two English cases, *Dixon v. Bell,* 5 Maule & S. 198, and *Sullivan*

*v. Creed,* 2 Ir. K. B. D. 317, which appear to apply the principle that a father is liable, under rules of negligence, for any injury resulting from an infant's use of a deadly weapon, if he, the father, from what he did or failed to do, ought to have foreseen that the infant might use the weapon negligently or in a manner dangerous to others. One or both of these English cases have been cited with approval in several American cases, as appears in the opinion in *Salisbury v. Crudale, supra.* In *Phillips v. Barnett,* 2 N. Y. City Ct. Rep. 20, cited in 29 Cyc. 1666, it was held that a father may be liable for the damage caused by the discharge of a pistol in the hands of his twelve-year-old son, where he has left it in an unlocked drawer in the room in which his children are allowed to play. In *Vallency v. Rigillo,* 91 N. J. Law, 307, 102 Atl. 348, the defendant negligently left dangerous dynamite cartridges in his home within easy reach of his infant child of tender years, who took them away from the house. An accident and injury resulted. It was held that a jury might find the defendant guilty of negligence. The cases above cited support our conclusion.

We find no reversible error in the record. The application for a supersedeas is denied, and the judgment is affirmed.

MR. CHIEF JUSTICE GARRIGUES and MR. JUSTICE BAILEY concur.