Orville DOUGLASS and Wilma Douglass, Plaintiffs-Appellees,

v.

HARTFORD INSURANCE COMPANY, a Connecticut Insurance Corporation, Defendant-Appellant.

No. 78–1616.

United States Court of Appeals, Tenth Circuit.

Submitted Nov. 22, 1978.

Decided Aug. 7, 1979.

Jerry A. Retherford and L. Dan Rector, of Rector, Retherford, Mullen & Johnson, Colorado Springs, Colo., for defendant-appellant.

Richard W. Laugesen, Jr., of DeMoulin, Anderson, Campbell & Laugesen, Denver, Colo., for plaintiffs-appellees.

Before DOYLE, McKAY and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

This is an appeal by the Hartford Insurance Company (Hartford) from a district court judgment holding Hartford had the duty under one of its homeowner policies to defend the insured against a negligent entrustment suit. Jurisdiction is based upon diversity of citizenship and the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.

We must decide whether Colorado would recognize negligent entrustment as an actionable tort, and whether the trial court correctly determined Hartford must defend this type of lawsuit under the circumstances of this case.

Plaintiffs-Appellees Orville and Wilma Douglass had in effect a homeowners policy extending general liability insurance coverage to themselves and their ten-year-old son Robert Ricky Douglass. During that time, a minibike the son was driving was struck by a truck, killing the boy and severely injuring his passenger, Todd Mahoney. The boys apparently were riding the minibike around a course which included the Mahoney's U-shaped driveway (adjacent to the Douglass residence) and portions of an adjacent county road. The accident occurred on the county road near the entrance to the driveway, when the bike drove in front of the oncoming truck.

The Douglasses requested Hartford investigate the accident and provide a defense under the homeowners policy in the event Mahoney sues, relying on the general liability insurance coverage language of the policy which reads:

This Company agrees to pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury or property damage, to which this insurance applies, caused by an occurrence. This Company shall have the right and duty, at its own expense, to defend any suit against the Insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, but may make such investigation and settlement of any claim or suit as it deems expedient.

Hartford denied any obligation, citing an exclusion to the general liability coverage as follows:

This policy does not apply: . . . to bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of:

.     .  .    .    .

(3) any recreational motor vehicle owned by any Insured, if the bodily injury or property damage occurs away from the residence premises;

The Douglasses then filed this action. Colorado law controls.

A hearing was held by the district court on opposing motions for summary judgment, the Douglasses claiming the recreational vehicle exclusion did not apply and the insurance company had a duty to defend; Hartford contended the opposite. The trial court ruled the minibike was a recreational vehicle within the meaning of the policy, and the accident occurred away from the residence premises. Although the Douglasses make arguments on those rulings in their brief, they did not cross-appeal and we do not treat their arguments.

The trial court, however, drew a distinction between tort liability arising out of the negligent use of the minibike and the liability of Mr. and/or Mrs. Douglass for the negligent act of entrusting their 10-year-old son with the minibike. It said:

[T]he gist of the action, the gravamen, if you will, is not the use of the motor vehicle, which arguably establishes a basis for these exclusions of the policy to become operative, but rather the gist or the gravamen of the tort is the failure to control and the failure to supervise what amounts to a dangerous instrumentality; and that is a ten year-old child with a

self-propelled vehicle or projectile such as this minibike.

Relying upon the language and reasoning of *Upland Mutual Ins., Inc. v. Noel*, 214 Kan. 145, 519 P.2d 737 (1974), the court held that Hartford had a duty to defend Mr. and Mrs. Douglass against a negligent entrustment action arising from this accident. The trial court noted Colorado had not specifically recognized negligent entrustment as a tort, but said, "Since Colorado recognizes prima facie torts in other respects, I see no reason why they wouldn't recognize it here."

To date no suit has been filed, but the six-year-old passenger, Todd Mahoney, admittedly was seriously injured and the statute of limitations will not begin to run at least until he reaches the age of majority. The likelihood of suit on the negligent entrustment theory, and the need for investigative work to prepare a defense, seem sufficient to support jurisdiction and our consideration of the issues. No one argues to the contrary.

█ Colorado courts have not recognized the tort of negligent entrustment in those precise words. But in *Dickens v. Barnham*, 69 Colo. 349, 194 P. 356 (1920), a father was found to be negligent for allowing his eight-year-old son to have access to a rifle which the boy discharged, injuring a passerby. The court concluded:

> A father may be liable on the ground that his own act in permitting the child to have access to some instrumentality potent for mischief is, in view of the child's want of capacity properly to manage it, the proximate cause of the injury.

194 P. at 357.

Hartford characterizes *Dickens* as recognizing a parent's liability for negligent supervision, but not negligent entrustment. The insurance company also contends there is a difference between an inherently dangerous instrumentality such as a rifle and the minibike involved here. Noting most negligent entrustment cases arise from automobile accidents, Hartford asserts imputing liability here to the parent effectively causes parents to be liable for their children's torts, contrary to Colorado law. *See Mitchell v. Allstate Ins. Co.*, 36 Colo.App. 71, 534 P.2d 1235 (1975); *Reaves v. Horton*, 33 Colo.App. 186, 518 P.2d 1380 (1973), *aff'd in part, rev'd in part*, 186 Colo. 149, 526 P.2d 304 (1974).

Negligent entrustment is a common law tort, recognized in virtually every state. The Restatement (Second) of Torts § 308 (1965) states the rule as follows:

> It is negligence to permit a third person to use a thing or to engage in an activity which is under the control of the actor, if the actor knows or should know that such person intends or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others.

The illustrations and comments to § 308 clearly indicate the tort applies to automobiles and weapons. Professor Prosser points out negligent entrustment is based on the negligence of the entruster, and says:

> A parent, for example, like anyone else, may be negligent in entrusting to a child a dangerous instrument such as a gun, or a thing which he has shown a propensity to misuse, such as matches, or an automobile, or in leaving such a thing where it is accessible to him. (Footnotes omitted.)

W. Prosser, Torts § 123 (4th ed. 1971). Another commentator states "[t]he crux of the negligence is the knowledge of the entruster of the youth, inexperience, known propensity towards reckless and irresponsible behavior, or other quality of the entrustee, indicating the possibility that he will cause injury." 1 J. Dooley, Modern Tort Law § 23.01 (1977).

There is a logical distinction between negligent entrustment, which may apply to any person entrusting a potentially dangerous instrumentality to a third person, and the duty of parents to control and supervise their children. The Restatement (Second) of Torts recognizes the distinction in § 316 as follows:

> A parent is under a duty to exercise reasonable care so to control his minor

child as to prevent it from intentionally harming others or from so conducting itself as to create an unreasonable risk of bodily harm to them, if the parent

(a) knows or has reason to know that he has the ability to control his child, and

(b) knows or should know of the necessity and opportunity for exercising such control.

Colorado has expressly recognized the formulation in § 316. *Mitchell v. Allstate Ins. Co., supra.* There is overlap between the two rules, but they are not mutually exclusive. Negligent entrustment is a well-recognized and logically based cause of action. The *Dickens* case cited above is so close that we have no problem holding Colorado would recognize a complaint based on negligent entrustment or negligent supervision, both of which may have been involved here. We reject Hartford's contentions otherwise.

We do not have to decide whether Todd Mahoney would win his case based upon such a theory. The policy requires Hartford to provide a defense even to "groundless, false or fraudulent" allegations, so long as no exception applies. We do not have all the facts; the court's ruling was on motions for summary judgment. But certainly a minibike driven by a 10-year-old, with a six-year-old passenger, entering a paved county road, at least invokes the possibility of recovery.

The resolution of this appeal then depends upon the scope of liability contemplated under this insurance contract. Many state courts have wrestled with this precise question and the cases are divided. As noted, the trial court relied upon and adopted the reasoning of *Upland Mutual Ins., Inc. v. Noel*, 214 Kan. 145, 519 P.2d 737 (1974). The Kansas Supreme Court was there presented with an automobile accident and a homeowners insurance policy containing language almost identical to the policy at issue here. The Noels were sued for the negligent entrustment of an automobile to their son whose negligence allegedly caused the death of a passenger in the car. Upland Mutual was requested to defend them under the general liability provisions of their homeowners policy. The company refused, citing an exclusion similar to the one in this case, applicable to automobiles. The court focused on the language in the insurance policy that Upland promised to pay "all sums which the Insured shall become legally obligated to pay as damages because of bodily injury or property damages," and reasoned:

> There is nothing in this broad insuring clause which restricts coverage to accidents or injuries occurring on the premises of the homeowner. In fact it is clear that the insuring clause covers a wide variety of accidents which might occur off the premises. Any escape from liability by Upland Mutual under its policy must be found in the special exclusion
>
> . . .

519 P.2d at 741.

Since the exclusion only covered "ownership, maintenance, operation, use, loading or unloading of . . . automobiles," and the basis of the action was the entrustment of the automobile, the court held:

> [T]he insurance policy before us expressly provides that Upland Mutual is required to defend the Noels against an action even if the suit is "groundless" in law or "false and fraudulent" in fact. . . .
> The actual liability of the insured to the claimant is not the criterion which places upon the insurance company the obligation to defend. Here Upland Mutual had an obligation to defend the Noels against the Forresters' action since the Forresters' petition contained allegations which, if sustained, would impose a liability covered by the policy.

*Id.* at 742. Reaching the same result as the Kansas case are: *Republic Vanguard Ins. Co. v. Buehl*, 295 Minn. 327, 204 N.W.2d 426 (1973); *Lalomia v. Bankers & Shippers Ins. Co.*, 35 A.D.2d 114, 312 N.Y.S.2d 1018 (1970); *McDonald v. Home Ins. Co.*, 97 N.J. Super. 501, 235 A.2d 480 (1967).

Hartford relies on *Barnstable County Mutual Fire Ins. Co. v. Lally*, 373 N.E.2d 966 (Mass.1978), which reached the opposite result and rejected the reasoning of *Upland Mutual.* The facts in *Barnstable* were on

all fours with the instant case. That court reasoned from prior state case law which held negligent entrustment actions require a plaintiff show the defendant owned or controlled the motor vehicle in question, and then gave the driver permission to operate it. The court continued:

> It is evident from this statement that "negligent entrustment" as a distinct and specific cause of action is not exclusive of, but, rather, is derived from the more general concepts of ownership, operation, and use of a motor vehicle. Therefore, it would be illogical to conclude that the exclusionary clause pertaining generally to the "ownership . . . operation, [or] use . . . of" a recreational motor vehicle does not apply specifically to the negligent entrustment of the vehicle to a minor.

373 N.E.2d at 969. To the same effect: *Cooter v. State Farm & Cas. Co.*, 344 So.2d 496 (Ala.1977); *Aetna Cas. & Sur. Co. v. American Mfrs. Mut. Ins. Co.*, 261 Ark. 326, 547 S.W.2d 757 (1977).

Our task is to ascertain how Colorado would resolve this conflict in the absence of authoritative case law. First, we note Judge Kane thinks Colorado would follow the Kansas case. "We will give substantial weight to a trial judge's perception of the law of his resident state when the law is unclear." *Glenn Justice Mortgage Co. v. First Nat. Bank*, 592 F.2d 567, 571 (10th Cir.1979). Second, a Colorado state district court decision is cited which allegedly decided the same way on identical facts. We do not have access to that case, but its existence is not denied by Hartford. Third, we note that different standards of interpretation as to the scope of exceptions in the insurance contracts played a part in the different outcomes of these cases. *Upland Mutual* placed the burden on the insurer to show that facts came within the exception, while *Barnstable* held the exclusionary clause was plain and free from ambiguity and therefore read in its usual and ordinary sense. Colorado courts have adopted a restrictive interpretation of exclusionary clauses which holds

[E]xceptions, limitations and exclusions to insuring agreements require a narrow construction on the theory that the insurer, having affirmatively expressed coverage through broad promises, assumes a duty to define any limitations upon that coverage in clear and explicit terms.

*Koncilja v. Trinity Universal Ins. Co.*, 35 Colo.App. 27, 528 P.2d 939, 941 (1974), *quoting Roach v. Churchman*, 431 F.2d 849 (8th Cir.1970).

We disagree with the Massachusetts court that these provisions are plain and free from ambiguity, since a number of courts have been presented with the identical issue and are divided as to the proper interpretation. A majority (4–3) appear to support the result reached by the trial judge here.

We conclude the trial court was correct in requiring the insurance company to defend.

The decision is affirmed.