Eldon T. WILDS and Bonnie B.
Wilds, Appellees,

v.

UNIVERSAL RESOURCES
CORPORATION, a Texas
corporation, Appellant.

No. 53283.

Supreme Court of Oklahoma.

April 12, 1983.

McPherson & Buckingham, Oklahoma City, Dean Rinehart, Rinehart & Rinehart, El Reno, for appellees.

Harold Logsdon, Baker, Logsdon & Phelps, Kingfisher, for appellant.

SIMMS, Vice Chief Justice:

Eldon T. Wilds and Bonnie B. Wilds, lessors, [hereafter the Wilds] brought this action to cancel an oil and gas lease and to quiet title against Universal Resources Corporation, lessee [hereafter Universal], alleging the lease had terminated at the end of the primary term because of Universal's failure to commence and prosecute drilling operations with due diligence. The trial court sustained Wild's motion for summary judgment from which order Universal appealed.

The Court of Appeals, Division I, reversed the trial court, and remanded with instructions that the trial court set aside the judgment and enter judgment for Universal. Wilds petitioned for a writ of certiorari and it was granted. Though the Court of Appeals found that the record supported the lower court's award of summary judgment for Wilds *under the theory argued by the parties,* it reversed the decision because in its view the parties misconstrued the elements necessary to entitle a lessor to the equitable relief of cancellation.

The lease was entered into on March 5, 1975, for a primary term of three years with a provision that unless lessees commenced drilling operations prior to March 5, 1978 or paid rental, the lease would terminate. Prior to the expiration of the primary term, lessee Universal cleared location. Two days before the primary term expired, Universal entered the drilling unit with a rathole drilling rig, a device used for drilling shallow holes to set conductor pipe. This rathole rig, capable of drilling to 150 feet total at the rate of 60 to 80 feet per day, was maintained with one employee for eight hours each day until March 26, 1978. Between March 3 and March 26, 1978, the rathole rig drilled to 67 feet; the drilling company was instructed by Universal to drill only a few feet each day. Apparently a drilling rig was available, but lessee made a business decision to use the rig on another location. On March 24, the Wilds made written demand of Universal for the lease. On March 27, Universal moved a drilling rig onto the unit and commenced actual drilling.

In sustaining Wilds' motion for summary judgment, the trial court found that Universal's activities did not constitute good faith commencement of drilling operations and therefore the lease terminated automatically. In reversing this decision, Wilds argue, the Court of Appeals has erred in its

holding that the lease could not be cancelled because the lessor failed to give notice of default and opportunity for compliance under an implied covenant to develop fully. The breach of an implied covenant and the necessity of notice were neither asserted in the trial court nor on appeal.

The precise question for review, then, is whether an implied covenant was at issue, necessitating notice before cancellation of the lease.

The lease provision at issue states:

"This lease shall remain in force for a term of three years from date (herein called the primary term) and as long thereafter as oil, gas, casinghead gas, casinghead gasoline, or any of the products covered by this lease is or can be produced from said land or from land with which said land is pooled, or operations are being continued as hereinafter provided."

"It is expressly agreed that if lessee shall commence operations for the drilling of a well at any time while this lease is in force, this lease shall remain in force and its term shall continue for so long as such operations are prosecuted and, if production results therefrom, then so long as such production may continue."

The foregoing provision contains a typical "unless" clause as distinguished from an "or" clause; the distinction is significant in determining the manner of terminating the lessee's interest and the basis of lessee's obligation:

"The *unless clause* is one of special limitation that terminates ipso facto according to its terms upon failure to drill or pay. The lessee does not promise either to drill or pay, but if the lease is to continue, he must do one or the other. The *or clause* is one of condition subsequent that requires affirmative action by the lessor or lessee for termination. The lessee affirmatively covenants to drill or pay * *. The 'or' clause is seldom used today * *." *Sullivan, Handbook of Oil and Gas Law, 105–106 (1955). See, also, 2 Summers, Oil and Gas (perm. ed.) 397–399, § 337.*

The provision can also be denominated a commence provision, whereby the primary term of the lease can be extended by drilling operations commenced within the primary term and completed afterwards. *Simmons v. McDaniel, 154 Okl. 168, 7 P.2d 419 (1932).* In *State v. Carter Oil Co.,* we defined a commence type lease:

"Where the lease involved is a 'completion' lease, a well must be completed within the primary term thereof or when the lease involved is a 'commence' lease, a well *must be commenced before* and completed with due diligence after the primary term fixed therein, producing oil or gas in paying quantities." (emphasis supplied) *Okl., 336 P.2d 1086, 1095.*

In order to satisfy the terms of the commencement provision, Universal has to show not only that operations were commenced, but that operations were prosecuted with due diligence. In other words, a lessee will not be allowed simply to go through the motions by doing preparatory activity to satisfy the commencement requirement and then delay. Unless changed by contract a commencement clause of an oil and gas lease has been generally interpreted to mean that operations for the drilling of a well and not the actual drilling must be commenced prior to the end of the primary term with good faith intention of completing the operation. *Smith v. Gypsy Oil Co., 130 Okl. 135, 265 P. 647 (1928).* In *The Law of Oil and Gas, § 32.3, p. 67,* Professor Kuntz explains the two-pronged requirement for commencement:

"A lessee has commenced a well if he has conducted operations on the land in good faith preparation for the drilling of a well for oil or gas and has continued the operation in good faith and with due diligence."

The Court of Appeals explained the requirement of due diligence as arising from an implied covenant, while lessor Wilds argues that the requirement is implicit in the drilling clause. Both parties agreed that operations for drilling had begun, thus satisfying the first prong of the test of commencement; the question is whether

Universal's lack of due diligence during the 3 weeks *after* the end of the primary term caused the lease to terminate automatically or whether notice was required by the lessor under an implied covenant to develop fully.[1]

Case law and commentators agree that under an *unless* type commencement clause, the lessee must be in good faith in beginning and continuing his operation; otherwise, the lease is lost. (in effect, the "commencement" in its two-pronged sense has never taken place.)

> "In the instance of the 'unless' type drilling clause, the lease will automatically terminate upon a failure of the lessee to drill or to pay delay rentals. It is not a forfeiture, and demand or notice is not required." *Kuntz, Law of Oil & Gas, § 53.3, p. 535.*[2]

■ The commencement provision in the lease at issue did not expressly require due diligence to avoid termination of the lease, but Oklahoma law has considered the requirement implicit.[3] The implicit nature of the requirement the Court of Appeals mistook for an implied covenant. Simply because there was no express provision in the lease which required drilling operations to be conducted with due diligence, it does not follow that the duty arises under an implied covenant. The implied covenant to develop fully[4] does not arise *until production has been obtained.*[5]

> "The obligation imposed on the lessee by the implied covenant of reasonable development may be generally stated as follows: *upon securing production of oil or gas from the leasehold, the lessee is bound thereafter to drill such additional wells to develop the premises as a reasonably prudent operator . . . ." 5 Williams and Meyers, Oil and Gas Law, § 832, p. 215–216* (emphasis supplied)

The Court of Appeals may have confused the implied covenant to develop fully with the now nearly defunct implied covenant to drill an exploratory or initial well.[6] The elements of a cause of action for the breach of this implied covenant were (1) unreasonable delay in drilling and (2) notice and demand for performance. Its importance has diminished because of modern leasing practices:

> "Under the modern lease form, no implied obligation exists upon the lessee to drill an exploratory well during the primary term. However, *once production has been acquired* by the lessee an implied covenant may exist that the lessee engage in further development of the lease." *Hemingway, The Law of Oil & Gas, § 8.3 (1971 ed.), p. 368.*

■ The drilling clause is designed to supersede the implied duty to drill an exploratory well. The presence of an express provision on drilling the initial well eliminates the need for the implied covenant relating thereto on the general principle that express lease provisions negate the implication of covenants on the same subject matter. *5 Williams and Meyers, § 812, p. 63.*

■ We find, therefore, that the implied covenant to develop fully was not applicable

---

1. For a discussion of the notice requirement under an implied covenant to develop fully, see *Lyons v. Robson, Okl., 330 P.2d 593 (1958).*

2. See *Brown, Law of Oil and Gas Leases (2nd Ed) Vol. 1, § 7.04; Gillespie v. Dougherty, 179 Okl. 330, 65 P.2d 486 (1937).*

3. See *Jones v. Moore, Okl., 338 P.2d 872 (1959); Aldridge v. Gypsy Oil Co., 132 Okl. 13, 268 P. 1109 (1928)* where the court recognized that diligent prosecution is a factor in determining whether or not the lease was continued in effect by virtue of the commencement of operations for drilling. Also see *Kuntz, Law of Oil & Gas, § 32.3, p. 77.*

4. Also referred to as covenant to further develop, covenant to develop, covenant to diligently develop, and covenant of reasonable development.

5. See *Doss Oil Royalty v. Texas Co., 192 Okl. 359, 137 P.2d 934 (1943). Hudspeth v. Schmelzer, 182 Okl. 416, 77 P.2d 1123 (1930); Texas Consolidated Oils v. Vann, 208 Okl. 673, 258 P.2d 679 (1952); Gypsy Oil v. Champlin, 163 Okl. 226, 22 P.2d 102 (1933).*

6. See, *5 Williams and Meyers, § 811, p. 59; Fox Pet. Co. v. Booker, 123 Okl. 276, 253 P. 33 (1926).*

to this lease provision since production had not yet been obtained. Further, notice and an opportunity for lessee's compliance was not required because the implied covenant was not at issue; under the "unless" commencement clause, the lease would terminate automatically if lessee was guilty of lack of due diligence in prosecuting operations.

■ We further find, however, after examining the entire record, that the order of the trial court should be reversed. The trial court improvidently granted a summary judgment in this cause. Even though the basic facts are undisputed, the motion for summary judgment should be denied if under the evidence reasonable people might reach different inferences or conclusions from the undisputed facts. *Munley v. ISC Financial House, Inc.,* Okl., 584 P.2d 1336 *(1978); Rules for the District Courts, Rule 13, 12 O.S. Chap. 2, Appendix.* Therefore, we remand to the trial court for further proceedings on the merits.

■ Finally, we find it necessary to comment on the Court of Appeals' assertion of the implied covenant theory on appeal, though it had not been proposed by either party at the trial court level or on appeal. In an equitable action, an appellate court is not bound by the reasoning or findings of the trial court. It may affirm a judgment if sustainable on any rational theory. *Carpenter v. Carpenter,* Okl., 645 P.2d 476 *(1982).* In this case, where the Court of Appeals believed it had discovered a theory which would necessitate a *reversal* of the trial court, it should have requested the parties to brief the issues before entering its judgment.

OPINION OF THE COURT OF APPEALS VACATED. JUDGMENT OF THE TRIAL COURT REVERSED AND REMANDED FOR FURTHER PROCEEDINGS IN A MANNER NOT INCONSISTENT WITH THE VIEWS EXPRESSED IN THIS OPINION.

BARNES, C.J., and IRWIN, LAVENDER, DOOLIN, HARGRAVE, OPALA and WILSON, JJ., concur.