FARMERS GROUP, INC., a California corporation, Farmers Insurance Exchange, a California corporation, and Mid-Century Insurance Company, a California corporation, Petitioners,

v.

R. Bruce TRIMBLE, Respondent.

No. 82SC358.

Supreme Court of Colorado,
En Banc.

Dec. 10, 1984.

Rector, Retherford, Mullen & Johnson, J. Stephen Mullen, Neil C. Bruce, Colorado Springs, for petitioners.

Pryor, Carney & Johnson, Thomas L. Roberts, W. Randolph Barnhart, Englewood, for respondent.

Wood, Ris & Hames, P.C., Peter W. Burg, Denver, for amicus curiae, Colorado Defense Lawyers Ass'n.

ERICKSON, Chief Justice.

We granted certiorari to consider whether evidence of intentional conduct is necessary to establish the tort of bad faith breach of an insurance contract. The court of appeals stated in *Farmers Group, Inc. v. Trimble,* 658 P.2d 1370 (Colo.App.1982), that to prevail on a claim of bad faith breach of an insurance contract, an insured must establish the absence of any reasonable basis for the conduct complained of, and that evidence of intentional or willful conduct, though less than that necessary to prove punitive damages, is required. The court of appeals accordingly held that pretrial dismissal for failure to state a claim upon which relief may be granted was inappropriate, and remanded for further proceedings. We affirm.

## I.

In November 1978, Bruce Trimble filed an insurance claim with Farmers Group, Inc. (petitioners), the attorney-in-fact management company for various subsidiary insurance companies, after his son drove the Trimble family automobile onto a residential lot and seriously injured Robert Jensen. At the time of the incident, Trimble had obtained a number of policies from Farmers Group, Inc., including a $100,000 homeowner's liability insurance policy issued by Mid-Century Insurance Company and a $50,000 automobile liability policy issued by Farmers Insurance Exchange. The policies authorized the petitioners to investigate and settle any claim arising under the policies, and provided that the petitioners had the right and the duty to de-

fend any action brought against the insured for claims covered by the named policies.

The petitioners promptly investigated Trimble's claim and, on November 20, 1978, mailed a letter to Trimble advising him that the "intentional act" exclusion in the Farmers Exchange policy might result in the denial of coverage. The company therefore stated that it would defend Trimble but that it was reserving all of its rights under the policy.[1]

Jensen offered to settle his suit in early 1979 for the full $50,000 limit under the Farmers Exchange policy. The petitioners rejected the settlement and did not inform Trimble of the settlement offer or of the facts learned through investigation of Jensen's claim. Thereafter, Jensen filed a civil action against Trimble, seeking $200,000 in compensatory damages and $200,000 in punitive damages based on theories of negligent entrustment and the family car doctrine.[2] Petitioners retained an attorney to defend the suit and advised Trimble that he could, but need not, obtain independent counsel, because of the possibility of an adverse judgment in excess of the policy limits.

In November 1979, Jensen's attorney informed the attorney retained by the petitioners to represent Trimble that recognition of the negligent entrustment claim asserted under the Mid-Century policy was established by *Douglass v. Hartford Ins. Co.*, 602 F.2d 934 (10th Cir.1979).[3] The petitioners responded by filing a motion for summary judgment with respect to both of Jensen's theories for relief. Although the district court initially granted the motion for summary judgment on the negligent entrustment claim, it reinstated the claim following Jensen's motion for reconsideration.

In October 1980, the petitioners filed a declaratory judgment action seeking a determination that the Mid-Century policy did not provide coverage for Jensen's negligent entrustment claim. Trimble retained an independent attorney and counterclaimed for damages, alleging misconduct in the manner in which the insurance claim was being handled. While the declaratory judgment action was pending, the underlying personal injury suit between Jensen and Trimble was settled. As a result of the settlement, Jensen received $50,000 under the Farmers Exchange policy and $12,000 under the Mid-Century policy. The district court later dismissed Trimble's amended counterclaims in the declaratory judgment action which alleged negligence, bad faith breach of an insurance contract, willful breach of contract, outrageous conduct, and implied right of action under section 10–3–1104(1)(h), 4 C.R.S. (1973).

## II.

The question of the elements of liability in tort for bad faith breach of an insurance contract in a third-party context has not been previously addressed by this court. The court of appeals, in reversing the dismissal of Trimble's counterclaim alleging bad faith breach, held that the tort is recognized in Colorado and is characterized by

---

**1.** A claims adjuster later advised his company that he would require the full limit of $50,000 as settlement authority. The petitioners also learned that Jensen had sustained approximately $10,000 in medical expenses and that his injuries were permanent. By June 1979, petitioners had reserved $50,000 with respect to Jensen's suit and had estimated the value of his claim at between $75,000 and $150,000.

**2.** It is uncontested that the Trimble family automobile was the instrumentality that caused Jensen's injuries. Jensen's negligent entrustment claim was based upon the fact that Trimble had made the family automobile available to his minor son, knowing of his son's poor driving record, his problems with alcohol, and his behavioral problems in general.

**3.** Prior to *Douglass*, Colorado courts had not explicitly recognized the tort of "negligent entrustment." The Tenth Circuit Court of Appeals stated in *Douglass* that, based on its interpretation of *Dickens v. Barnham*, 69 Colo. 349, 194 P. 356 (1920), Colorado courts recognize negligent entrustment as an actionable claim. *See Hasegawa v. Day*, 684 P.2d 936 (Colo.App.1983). The Tenth Circuit also held that a homeowner's liability insurance policy created a duty on the part of an insurer to defend its insured against a claim based on negligent entrustment.

intentional or willful conduct on the part of the insurance company. The court of appeals stated that to prevail on a claim of bad faith breach of an insurance contract, "an insured must establish the absence of any reasonable basis for the conduct complained of," and that the intent which a plaintiff must establish is not the same as the intent needed to prove punitive damages. *Trimble*, 658 P.2d at 1376.

The duty of the insurer to act in good faith when dealing with its insured is characterized in many jurisdictions as a duty implied by law as a covenant of the insurance contract. In *Gruenberg v. Aetna Ins. Co.*, 9 Cal.2d 566, 575, 108 Cal.Rptr. 480, 486, 510 P.2d 1032, 1038 (1973), the California Supreme Court stated,

> in every insurance contract there is an implied covenant of good faith and fair dealing. The duty to so act is [immanent] in the contract whether the company is attending to the claims of third persons against the insured or the claims of the insured itself. Accordingly, when the insurer unreasonably and in bad faith withholds payment of the claim of its insured, it is subject to liability in tort.

*See also Crisci v. Security Ins. Co.*, 66 Cal.2d 425, 58 Cal.Rptr. 13, 426 P.2d 173 (1967); *Comunale v. Traders and General Ins. Co.*, 50 Cal.2d 654, 328 P.2d 198 (1958).

■ The basis for liability in tort for the breach of an insurer's implied duty of good faith and fair dealing is grounded upon the special nature of the insurance contract and the relationship which exists between the insurer and the insured. The motivation of the insured when entering into an insurance contract differs from that of parties entering into an ordinary commercial contract. By obtaining insurance, an insured seeks to obtain some measure of financial security and protection against calamity, rather than to secure commercial advantage. *Egan v. Mutual of Omaha Ins. Co.*, 24 Cal.3d 809, 169 Cal.Rptr. 691, 620 P.2d 141 (1979); *McCorkle v. Great Atlantic Ins. Co.*, 637 P.2d 583 (Okla.1981); *see generally* Jurika & Louderback, *Standards for Limiting the Tort of Bad Faith Breach of Contract*, 16 U.S.F.L.Rev. 187 (1982). The refusal of the insurer to pay valid claims without justification, however, defeats the expectations of the insured and the purpose of the insurance contract. It is therefore necessary to impose a legal duty upon the insurer to deal with its insured in good faith. *Noble v. National American Life Ins. Co.*, 128 Ariz. 188, 624 P.2d 866 (1981).

■ The standard of conduct on the part of the insurer when dealing with claims arising under an insurance policy is shaped by, and must reflect, the quasi-fiduciary relationship that exists between the insurer and the insured by virtue of the insurance contract. Particularly when handling claims of third persons that are brought against the insured, an insurance company stands in a position similar to that of a fiduciary. *See, e.g., Rova Farms Resort, Inc. v. Investors Ins. Co.*, 65 N.J. 474, 323 A.2d 495 (1974); *Baxter v. Royal Indem. Co.*, 285 So.2d 652 (Fla.App.1973). By virtue of the insurance contract, the insurer retains the absolute right to control the defense of actions brought against the insured, and the insured is therefore precluded from interfering with the investigation and negotiation for settlement. *See Aetna Casualty and Surety Co. v. Kornbluth*, 28 Colo.App. 194, 471 P.2d 609 (1970). As the Supreme Court of Wisconsin has commented,

> where a person purchases an insurance policy, "[he barters] to the insurance company all of the rights possessed by him to discover the extent of the injury and to protect himself as best he can from the consequences of the injury. He has contracted with the insurer that it shall have the exclusive right to settle or compromise the claim, to conduct the defense, and that he will not interfere except at his own cost and expense."

*Anderson v. Continental Ins. Co.*, 85 Wis.2d 675, 688, 271 N.W.2d 368, 375 (1978) (quoting *Hilker v. Western Automobile Ins. Co.*, 204 Wis. 1, 14, 235 N.W. 413, 414 (1931)); *see also* Rumberger, Kirk, & Wall, *Justice Holmes and the Trial Lawyer:*

*Malicious Prosecution, Bad Faith and ... Excellence*, 16 Forum 627, 633–34 (1981).

■ Given the quasi-fiduciary nature of the insurance relationship, we are persuaded that the standard of conduct of an insurer in relation to its insured in a third party context must be characterized by general principles of negligence. *Cf. Kornbluth*, 28 Colo.App. at 199, 471 P.2d at 611 (insurer must exercise reasonable care in fulfilling its duty of representation); *see also Employer's Equitable Life Ins. Co. v. Williams*, 282 Ark. 29, 665 S.W.2d 873 (1984) (third party tort of bad faith is the negligent failure to settle claim within policy limits). The question of whether an insurer has breached its duties of good faith and fair dealing with its insured is one of reasonableness under the circumstances. The relevant inquiry is whether the facts pleaded show the absence of any reasonable basis for denying the claim, "i.e., would a reasonable insurer under the circumstances have denied or delayed payment of the claim under the facts and circumstances." *Anderson*, 84 Wis.2d at 692, 271 N.W.2d at 377; *Noble*, 624 P.2d at 868.

■ The court of appeals characterized bad faith breach of an insurance contract as an "intentional tort," and stated that evidence of intent of a degree less than that necessary to prove punitive damages is required to prevail on the claim. We agree with the analysis of the Supreme Court of Arizona, however, that, while the conduct forming the basis of the claim will necessarily be an "intentional act" by virtue of the necessity of a conscious decision on the part of the insurer to refuse to pay a claim, the standard applicable to establish the tort of bad faith remains one of reasonableness under the circumstances. *Compare Noble*, 624 P.2d at 868 *with Sparks v. Republic Nat. Life Ins. Co.*, 132 Ariz. 529, 647 P.2d 1127 (1982). In our view, evidence of intent, such as intentional misconduct, actual dishonesty, fraud, or concealment is not a prerequisite to recovery on a claim of bad faith breach of an insurance contract.

■ We are also not persuaded by the assertion of petitioners and *Amici* that, absent actual exposure of an insured to a judgment in excess of policy limits, there can be no breach of the duty of good faith by the insurer. The Eleventh Circuit Court of Appeals, in interpreting Alabama law, has addressed the issue and stated, "[i]f the action accrues at the point when payment is *refused*, the elements of the tort are satisfied on such *refusal*, and the continuing condition of nonpayment cannot be a predicate to a bad faith cause of action." *Berry v. United of Omaha*, 719 F.2d 1127, 1129 (11th Cir.1983) (emphasis in original). *See also Harvey v. General Tire and Rubber Co.*, 153 Cal.App.3d 1015, 200 Cal.Rptr. 722 (Cal.App. 2 Dist.1984); *cf. Schlauch v. Hartford Acc. and Indem. Co.*, 146 Cal. App.3d 926, 194 Cal.Rptr. 658 (Cal.App. 3 Dist.1983). We agree that it is the affirmative act of the insurer in unreasonably refusing to pay a claim and failing to act in good faith, and not the condition of nonpayment, that forms the basis for liability in tort. An actual judgment in excess of the policy limits is therefore not a necessary prerequisite to a claim of bad faith breach of an insurance contract.

In this case, the court of appeals stated that Trimble's counterclaim, when construed in his favor, states a valid claim for relief based on bad faith breach of an insurance contract, and that disputed questions of fact with respect to petitioners' position regarding coverage and reasonableness of petitioners' conduct under the circumstances remained to be resolved by a jury. *Trimble*, 658 P.2d at 1375, 1376. The court of appeals also held that Trimble's counterclaim against his insurance carrier stated a facially sufficient claim of negligence for failure to settle the claims against Trimble. *Id.*, 658 P.2d at 1374. We agree that the summary dismissal of Trimble's counterclaim for bad faith breach of the insurance contract was error. Inasmuch as this opinion recognizes that the tort of "bad faith" is actually characterized by a standard of reasonableness akin to that of negligence, the assertion in the

pleadings of two separate and distinct claims of bad faith and negligence is inappropriate. On remand, the pleadings should be amended to state a claim for relief consistent with this opinion.

The judgment of the court of appeals is affirmed.

KIRSHBAUM, J., does not participate.