**Christopher Allen VANCE, a minor, By and Through his mother and guardian, Deborah VANCE, Appellant,**

v.

**Gary THOMAS and Phyllis Rae Thomas, Appellees.**

No. 63399.

Court of Appeals of Oklahoma.

March 4, 1986.

Patrick E. Carr, Carr & Carr, Tulsa, for appellant.

Phillips Breckinridge, Brown, Breckinridge & Williams, Tulsa, for appellees.

MEANS, Presiding Judge.

This appeal was placed on the Accelerated Docket for early disposition. Oral argument was heard on February 20, 1986.

Plaintiff appeals from the order of the trial court sustaining Defendants' motion for summary judgment and refusing Plaintiff's request to amend. Having reviewed the record and applicable law, we reverse and remand.

Plaintiff Christopher Vance brought this action by and through his mother for injuries which he sustained when he was shot in the eye with a BB gun on October 13, 1980. Earlier that day, defendant Phyllis Rae Thomas purchased a BB gun for her two sons, ten-year-old Bobby and eight-year-old Brian. Neither boy received any training with the gun or any instructions from either parent concerning safety. When she returned from purchasing the gun, Mrs. Thomas let Bobby take it to his room. She stated that she told him to put the gun away, but she did not make any other determination as to where he had placed it. She knew that he had taken it from the box and was playing with it because he had asked her what the safety button was for.

That same evening, Mrs. Thomas brought Mrs. Vance and her three young boys to the Thomas home. Christopher Vance was six years old at the time. His brother Mark was two and Eric was one. All five boys went into Bobby and Brian's room to play. A few moments later, the parents heard screams from the room where the boys were playing and discovered that Christopher had been shot in the eye with the BB gun. Although there is some dispute as to whether Bobby was shaking the gun when it discharged or whether the gun fell off the bed and discharged, it is undisputed that the BB gun had not been put away, was loaded, and was easily accessible to the children.

Plaintiff brought this action against Bobby Thomas and Bobby's parents.[1] Defendants, Mr. and Mrs. Thomas, moved for summary judgment which was sustained. Parents asserted that there was no substantial controversy as to any material fact and that, under the law in Oklahoma, they were not responsible for the negligence of their child. Plaintiff objected to the motion for summary judgment and raises those same objections on appeal. Plaintiff also complains that the court erred in refusing to allow him to amend his pleadings.

We find the sustainment of the summary judgment erroneous as a matter of law. Plaintiff's response to the motion for summary judgment and evidentiary materials present several legal theories under which Parents' negligence should be decided by a jury.

As pointed out by Parents, the mere fact of paternity does not make a parent liable for the torts of his minor child. *Stumpf v. Montgomery*, 101 Okla. 257, 226 P. 65 (1924). However, a parent may be liable for an act of his child if the parent's conduct was such as to render the parent a principal tortfeasor, or, in other words, if the parent's own negligence was a proximate cause of the injury. *See, e.g., Dickens v. Barnham*, 69 Colo. 349, 194 P. 356 (1920). Thus, a parent may be liable if the parent's negligence made the injury possible. 59 Am.Jur.2d *Parent and Child* § 130 (1971). Most often parental liability is sought to be imposed where the parent entrusts his child with an instrumentality which, because of the youth or inexperience of the child, may become a source of danger to others. *See, e.g., Carmona v. Padilla*, 4 A.D.2d 181, 163 N.Y.S.2d 741 (1957).

In the instant case, Parents correctly point out that there is no factual dispute as to their behavior. Mrs. Thomas stated that she told Bobby to put the gun away, but

1. A jury trial resulted in a verdict in favor of defendant Bobby Thomas, finding him not guilty of any negligence. That case is on appeal, pending with the supreme court, in number 64,020.

did not check to see if he had obeyed. She knew her sons had been playing with the gun earlier, but she did not check the room before the young Vance children arrived. She further knew that five young boys, aged one to ten, would be playing in the room. Plaintiff contends that these acts and omissions on the part of Mr. and Mrs. Thomas were questions for the jury in deciding whether their alleged negligence was the proximate cause of Christopher's injury. This court agrees, based on several theories.

■ One such theory presented by Plaintiff is the theory of negligent entrustment. As noted earlier, a parent may be liable if he or she is negligent in entrusting a dangerous weapon or instrumentality to a child who, because of his age or inexperience, might use the instrumentality in such a way as to endanger the person of another. *Honea v. Bradford*, 39 N.C.App. 652, 251 S.E.2d 720 (1979). A parent, like anyone else, may be negligent in entrusting to a child a dangerous instrument, or a thing which the child has a propensity to misuse, or in leaving such a thing where it is easily accessible to the child. W. Prosser, *Handbook of the Law of Torts* § 123 (4th ed. 1971).

This theory is espoused in *Connor v. Houtman*, 350 P.2d 311 (Okla.1960). Although *Connor* involved a bow and arrow in the hands of a three-year-old, in dicta, the court commented:

> [G]enerally speaking, an air rifle, where possession or use is not prohibited by statute or ordinance, is not considered a dangerous instrumentality per se in the hands of a child and ... a parent is not liable for injuries inflicted by the child in using the rifle in absence of proof that the parent knew that child, at time of injury or prior thereto, was or had wrongfully or improperly used same.

*Id.* at 314.

Both Plaintiff and Parents claim that *Connor* supports their positions. Contrary to Parents' contention, *Connor* does not say that parents can never be liable. Instead, the *Connor* court found that a bow and arrow was not dangerous per se and further that there was no evidence at trial that the parents had any knowledge that their small child was improperly using the bow and arrow. *Connor* is similar to the instant case in that there is no evidence that the parents had actual knowledge that the child had ever improperly or wrongfully used the BB gun.

There is some judicial disagreement as to whether a BB gun is a dangerous instrumentality. See *Annot.*, 68 A.L.R.2d 782, 795 (1959). While admittedly a BB gun is not classified as a firearm, it is "capable of hurtling a projectile with sufficient force to penetrate an eye and cause severe injury." *Bell v. Tilton*, 234 Kan. 461, 470–471, 674 P.2d 468, 476 (1983). *See also Phillips v. D'Amico*, 21 So.2d 748 (La.Ct.App.1945). Even if a BB gun is not inherently dangerous, the parent may still be liable if he knows that the child's age or immaturity makes it dangerous. 59 Am.Jur.2d *Parent and Child* § 132 (1971).

In the instant case, the age and immaturity of the children increased the potential danger. There is no evidence that Bobby understood or had been taught the danger of playing with the BB gun. There is also no evidence that Bobby had been given any instructions except to put the gun away until his father came home.

■ Plaintiff also pleaded the theory of a duty to an invitee. While our courts have occasionally stated that a social guest is an invitee, *Foster v. Harding*, 426 P.2d 355 (Okla.1967), explains that a guest is more correctly labeled as a licensee, entitled to a duty of ordinary care. Those who invite children on their premises must take certain precautions dictated by ordinary care to protect them from injury. Such care requires consideration for the age, maturity, and capacity of the children to appreciate danger. *Herndon v. Paschal*, 410 P.2d 549 (Okla.1966).

In *Hart v. Lewis*, 187 Okla. 394, 103 P.2d 65 (1940), the court was faced with a fact situation similar to the instant case. In *Hart*, the owner of a business had left a

loaded pistol in his office. Two young boys entered the office and in playing with the gun, one was killed. The parents brought a wrongful death action against the owner of the gun, asserting that his negligence in leaving the gun accessible to young children had caused the accident. The court stated that the duty of the property owner "is an active, positive exercise of ordinary care and caution to prevent injury to an invitee.... The placing of the loaded pistol within reach of boys of the ages of six to eleven years was not an exercise of the highest degree of care." *Id.* at 396, 103 P.2d at 68. Although *Hart* involved the duty to a business invitee rather than a licensee, the court noted that the owner's alleged negligence and proximate cause were questions for the jury.

Finding that the minor plaintiff was an invited guest and a licensee, the court in *Anderson v. Butler*, 284 N.C. 723, 202 S.E.2d 585 (1974), allowed the question of the parents' negligence to be decided by the jury. Stating the general principle that a parent is not ordinarily liable for the torts of his minor child, the court noted that "a parent may be liable because of his independent negligence if he permits his child to possess a dangerous instrumentality which causes injury to another." This liability can also incur when the parent entrusts to an immature child an instrumentality which is not inherently dangerous "but which becomes dangerous because of the child's immaturity or lack of judgment." In both instances liability arises from the parents' independent negligence. "The test of responsibility in all of these types of cases, as in all negligence actions, is whether an injurious result could have been foreseen by a person of ordinary prudence." *Id.* at 730, 202 S.E.2d at 589.

Finally, Plaintiff sought to establish the negligence of Parents under the *Restatement (Second) of Torts* § 316 (1965), which states:

A parent is under a duty to exercise reasonable care so to control his minor child as to prevent it from intentionally harming others or from so conducting itself as to create an unreasonable risk of bodily harm to them, if the parent

(a) knows or has reason to know that he has the ability to control his child, and

(b) knows or should know of the necessity and opportunity for exercising such control.

■ The comments to section 316 specifically state that a parent may be liable under the rule although the child himself is not subject to liability, explaining:

The child may be so young as to be incapable of negligence, but this does not absolve the parent from the performance of his duty to exercise reasonable care to control the child's conduct. Indeed, the very youth of the child is likely to give the parent more effective ability to control its actions and to make it more often necessary to exercise it.

*Id.* at comment c. This theory is based on the parent's negligent supervision when that parent fails to control or supervise his child. Although it may overlap with negligent entrustment, the two rules are not mutually exclusive. *Douglass v. Hartford Insurance Co.*, 602 F.2d 934, 936–37 (10th Cir.1979).

The Restatement position was adopted in *Mitchell v. Wiltfong*, 4 Kan.App.2d 231, 604 P.2d 79 (1979), where the court determined that a parent may be liable not because of his relationship to the child or the dangerous instrumentality, "but because of his own negligence—because of not taking reasonable precaution against an injurious result which he could well foresee." *Id.* at 233–234, 604 P.2d at 81. Relying on an earlier case involving an injury with a BB gun, *Capps v. Carpenter*, 129 Kan. 462, 283 P. 655 (1930), the court noted: "*Capps* clearly indicates that parents may be liable for the tortious acts of their child, not because the child's acts are imputed to them, but because of their own negligence in failing to exercise reasonable care to control the child." *Id.* at 234, 604 P.2d at 82.

■ In the instant case, the question concerning whether Parents exercised the proper care in telling ten-year-old Bobby to

put the gun away and taking no further action was a question for the jury. *See, e.g., Thomas v. Inman,* 282 Or. 279, 578 P.2d 399 (1978); *Kuhns v. Brugger,* 390 Pa. 331, 135 A.2d 395 (1957). Although summary judgment is properly invoked when it eliminates a useless trial, it should be denied if under the evidence reasonable people might reach different conclusions or inferences. *Wilds v. Universal Resources Corp.,* 662 P.2d 303, 307 (Okla.1983). In the instant case, the issues of the parents' negligence and proximate cause are for a jury to decide. We therefore reverse the granting of summary judgment and remand for further proceedings.

RAPP, J., concurs.

BACON, J., specially concurs.

BACON, Judge, specially concurring.

I concur and would like to add that summary judgment for defendants is not proper when the pleadings and evidence show that defendants sent a ten-year-old, an eight-year-old, a six-year-old, a two-year-old, and a one-year-old child into a closed bedroom with a loaded BB gun. I would go one step further and take judicial notice that a BB gun is a dangerous instrumentality. Anyone who does not agree should try convincing a person who has lost his sight in a BB gun accident that such guns are not dangerous. I see no difference between this case and one where a parent sends five children under ten years of age into a closed bedroom where there is a fan running without a guard, a biting bulldog, or a loaded twelve-gauge shotgun. That parent is liable whether a city ordinance was violated or whether the parent's child was the one who ultimately discharged the weapon.