**Dorothy BUTCHER, as Conservator for Dion Risoli, Plaintiff-Appellant,**

v.

**Manuel CORDOVA, and Catherine Cordova, Defendants-Appellees.**

No. 85CA0108.

Colorado Court of Appeals, Div. II.

Sept. 18, 1986.

Rehearing Denied Oct. 16, 1986.

Gene L. Breitenbach, P.C., Gene L. Breitenbach, Pueblo, for plaintiff-appellant.

Kane & Donley, Jerry Alan Donley, Colorado Springs, for defendants-appellees.

METZGER, Judge.

Dion Risoli, age 9, injured his left eye while using a BB pistol lent to him by his cousin, Randy Cordova, age 11, during a visit at Randy's home. By and through his conservator, Dorothy Butcher, he sued Randy's parents, defendants Catherine and Manuel Cordova, based on a theory of negligent entrustment. At the conclusion of plaintiff's case, the trial court directed a verdict in favor of the Cordovas, holding that as a matter of law they owed no duty to Dion. On appeal, plaintiff contends that the trial court erred in concluding that Manuel Cordova owed no duty to Dion solely because Dion's mother was in the Cordova home at the time of the accident. We agree, and reverse as to Manuel Cordova, but affirm as to Catherine Cordova.

On a Sunday afternoon in late December 1979, Dion, his 12–year–old brother James, their sisters, and their mother, Rose Risoli, visited the Cordova home. James brought his air-rifle, which was a Christmas present, to show to Randy Cordova, his cousin. However, he brought no ammunition because his mother had forbidden him to do so. Randy owned two BB pistols.

While the adults visited in the living room, the older boys played throughout the house, and Dion accompanied them most of the time. At some point in the afternoon, James showed his new air-rifle to all the adults in the living room.

Later in the day, the two older boys asked Manuel Cordova, who was then in a separate part of the Cordova home, if they could go outside and shoot the guns. He replied: "Yes, but be careful." Approximately 20 minutes later, after Dion had relentlessly "bugged" the older boys for permission to participate, Randy allowed him to shoot his pistol. On the second shot, the pistol did not fire properly, and, while Dion was looking down the barrel to investigate the problem, the pistol misfired and injured his left eye.

Both older boys had been trained in the use of BB pistols by their respective fathers. Mr. Cordova allowed Randy to shoot his pistols unsupervised, after receiving permission. Mr. Risoli allowed James to shoot his pistol, but only in the presence of an adult. Dion was forbidden to shoot BB pistols because of his age; he and his brother were aware of this rule.

Plaintiff sued the Cordovas based on the theory of negligent entrustment. At the close of plaintiff's case, the trial court directed a verdict in favor of the Cordovas, ruling, as a matter of law, that they owed no duty to Dion. It reasoned that the only person who owed a duty of care to Dion was Rose Risoli, his mother. The trial court based its ruling on *Freeze v. Congleton*, 276 N.C. 178, 171 S.E.2d 424 (1970), in which the court held that the owners of a home owed no duty to a toddler who was injured when he ran through a glass door, because the child's mother was present in the room, saw the toddler walking toward the glass door, and was thus apprised of the danger.

The sole issue presented here is whether a parent's presence relieves a host of any duty to a visiting child. We hold that, under the circumstances of this case, it does not.

A duty generally arises to protect a third person from the negligence of others "only when a reasonable person would recognize the existence of an unreasonable

risk of harm to others through the intervention of such negligence." W. Prosser and W. Keeton, *Torts* § 33 (5th ed. 1984). Whether a defendant owes a legal duty to a particular plaintiff is a question of law. *Metropolitan Gas Repair Service, Inc. v. Kulik*, 621 P.2d 313 (Colo.1980). The imposition of a duty in a particular case depends upon the foreseeability of the risk of an accident and injury, the magnitude of the burden of guarding against it, the consequences of placing the burden on defendant, and a weighing of the social utility of defendants' actions against the culpability or moral blame which might have existed. *Turner v. Grier*, 43 Colo.App. 395, 608 P.2d 356 (1979).

The issue of Manuel Cordova's duty in this case must be viewed in the context of the principles of negligent entrustment, which was first expressly adopted in this state in *Hasegawa v. Day*, 684 P.2d 936 (Colo.App.1983). There, we relied on Restatement Second of Torts § 308 (1965):

> "It is negligence to permit a third person to use a thing or to engage in an activity which is under the control of the actor, if the actor knows or should know that such a person intends or is likely to use the thing or conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others."

The adoption of the theory of negligent entrustment was also based in part on *Dickens v. Barnham*, 69 Colo. 349, 194 P. 356 (1920). There, a father was held to owe a duty to a third person injured by his eight-year old child. The court held that a father may be liable for permitting his child to have access to "some instrumentality potent for mischief," a rifle, knowing his child lacked the capacity to manage it properly. *Dickens v. Barnham, supra.*

In ruling on a motion for directed verdict, the trial court must view the evidence and inferences therefrom in the light most favorable to the party against whom the motion is directed. *Kopeikin v. Merchants Mortgage & Trust Corp.*, 679 P.2d 599 (Colo.1984). A motion for directed verdict should not be granted unless the evidence compels the conclusion that reasonable jurors could not disagree and that no evidence or inference has been received at trial upon which a verdict against the movant could be sustained. *Salstrom v. Starke*, 670 P.2d 809 (Colo.App.1983).

Under the facts of this case, we hold that the trial court erred in directing a verdict. When the evidence is viewed in the light most favorable to plaintiff, Manuel Cordova's duty, and his awareness of possible danger, are apparent.

Manuel Cordova assumed a duty of care to his visiting nephews when he voluntarily gave permission to shoot the pistols in his backyard. He controlled the use of these pistols, and knew or should have known that the BB pistol might be used in such a manner as to create an unreasonable risk of harm to others. Indeed, the facts that he required his son to obtain permission before using the BB pistol, and that he had taken the time and effort to instruct his son on the pistol's use further illustrate his awareness that BB pistols required more care than ordinary toys. The words he used in giving permission are even more probative of his recognition that a risk of harm existed: "Yes, but be careful."

He gave the older boys permission to shoot the BB pistols unsupervised, without ascertaining whether there were any restrictions on James' use of those devices. The air rifle which James had brought to display had no ammunition. And, even though Dion was not present when the permission was given, reasonable jurors could find that it was foreseeable that he would "tag along" with the older boys, since that had been his pattern of conduct throughout the afternoon.

Moreover, a period of at least 20 minutes elapsed from the time that permission was given until Dion's eye injury occurred. There is no evidence that Manuel Cordova did anything to check on the children to ascertain how they were conducting themselves with the BB pistols in his own backyard.

Thus, viewing the evidence and inferences in the light most favorable to plaintiff, we conclude it was foreseeable to a reasonable person that there was an unreasonable risk of an accident and possible injury to these young boys. *See Hasegawa v. Day, supra.*

The effort required to guard against such a risk was, at most, minimal since Manuel Cordova could have either told the boys initially to obtain permission from Rose Risoli as well, or, at a minimum, could have supervised the boys' activities himself. He did neither.

We do not believe the consequences of placing this burden on Manuel Cordova to be too great. While Rose Risoli is generally responsible for the conduct of her children, the fact that Manuel Cordova took it upon himself to give permission to a visiting child to use a pistol with a potential for mischief requires that he also assume a duty as a result.

Nor do we believe that the trial court's reliance on *Freeze v. Congleton, supra,* is well-founded. In that case, the injured toddler's mother was present in the room when her son ran through the glass door. She was aware that he had been running in and out of that doorway while the door was open, and she was aware of the dangers posed by the door's presence.

In this case, Dion's mother was in the living room, visiting with her sister, defendant Catherine Cordova. She was totally unaware that Manuel Cordova had given the boys permission to shoot BB pistols in the backyard. Rose Risoli's mere presence in the house is not enough to exonerate Manuel Cordova from responsibility. His affirmative act of giving permission to his son and nephew to use an instrument "potent for mischief" imposed a duty upon him to recognize that, in so doing, he created an unreasonable risk of harm.

Thus, in light of the facts and inferences in this case, a directed verdict in favor of Manuel Cordova was not warranted. That portion of the judgment is reversed and the cause is remanded for a new trial. However, we agree with both parties that the record is devoid of any facts or inferences which would necessitate disturbing the directed verdict in favor of defendant Catherine Cordova; accordingly, that portion of the judgment is affirmed.

VAN CISE and STERNBERG, JJ., concur.