JOE H. FUSSELL et al. Appellants, vs. J. B. HAIL et al. Appellees.

*Opinion filed February 20, 1908.*

1. CHURCHES—*courts have no jurisdiction over ecclesiastical bodies unless civil or property rights are involved.* Civil courts have no power to assume control of the action of an ecclesiastical tribunal merely to declare the extent of its jurisdiction, examine the regularity of its proceedings or revise its judgments, and there is no remedy in the civil courts for an abuse of ecclesiastical authority which does not violate a civil or property right.

2. SAME—*when a bill to enjoin churches from uniting does not involve property rights.* A bill to enjoin the union of voluntary religious organizations owning no property does not involve any property rights, although the bill alleges that there are a large number of churches and congregations in the organizations for whose use property is held in trust; where there is no allegation setting forth any deed, devise, declaration of trust or other conveyance, or any terms thereof, the purpose of which would be defeated by the proposed union.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Macon county; the Hon W. C. JOHNS, Judge, presiding.

E. B. GREEN, THEODORE G. RISLEY, JOE H. FUSSELL, J. J. McCLELLAN, and WILLIAM REISTER, (W. C. CALDWELL, of counsel,) for appellants.

JOHN M. GAUT, for appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

The bill filed in this case in the circuit court of Macon county prayed for a decree declaring that the general assembly of the Cumberland Presbyterian Church has no power, under the constitution of the church, to unite it with the Presbyterian Church in the United States of America, or to carry over any of the property belonging to or held in trust for the Cumberland Presbyterian Church, or any

church congregation thereof, and especially the church property in the city of Decatur, in said county of Macon, and for an injunction to prevent the taking of any action to bring about such union. The complainants are members of the Cumberland Presbyterian Church who are opposed to its union with the Presbyterian Church in the United States of America, and sue in behalf also of all other members who are opposed to such union. The defendants are commissioners to the general assembly of the Cumberland Presbyterian Church, members of its committee on fraternity and union, and trustees of the church property in the county of Macon. This appeal is from the judgment of the Appellate Court affirming the decree of the circuit court dismissing the bill for want of equity after sustaining a demurrer thereto.

The Cumberland Presbyterian Church had its origin in 1810 in differences of opinion arising among members of the Presbyterian Church in the United States of America in regard to questions of doctrine taught by the Westminster confession of faith. These differences of opinion concerned the doctrines of fatality, election and predestination, and finally resulted in the organization of the Cumberland presbytery as an independent presbytery. It was not the intention of the organizers to found a new church, and it was their hope that the independent presbytery so formed would in a short time be recognized by the old church. The synod, which was constituted in 1813, set forth the dissent of the Cumberland Presbyterians from the Westminster confession as follows: "They dissent from the confession in, first, that there are no eternal reprobates; second, that Christ died, not for a part, only, but for all mankind; third, that all infants dying in infancy are saved through Christ and sanctification of the spirit; fourth, that the spirit of God operates on the world, or as co-extensively as Christ has made the atonement, in such a manner as to leave all men inexcusable." The next year a confession of faith pre-

pared by a committee previously appointed was adopted, it being the Westminster confession so revised as in the judgment of the committee to eliminate the idea of fatality only. The new church retained the Presbyterian discipline and form of government and in 1829 a general assembly was formed.

At various times since the separation the question of a union with some other denomination has been considered by the Cumberland Presbyterian Church, and action having that purpose in view has been taken by the general assembly though such union has never been consummated. The vital objection to a reunion with the Presbyterian Church in the United States of America, as it was the cause of the original separation, has been the supposed existence of the doctrine of fatality in the creed of the latter church. In 1903 the general assembly of the Cumberland Presbyterian Church appointed a committee on fraternity and union, to confer with such like committees as might be appointed by other Presbyterian bodies, in regard to the desirability and practicability of close affiliation and organic union among the members of the Presbyterian family in the United States, and if, in any particular case, union should seem desirable and practicable, to suggest suitable measures for its accomplishment, and to report such basis of union as might be mutually agreed upon to the next general assembly. This committee having agreed with a like committee of the Presbyterian Church in the United States of America upon a plan of reunion and union of the two churches, reported it to the general assembly of 1904, setting forth in their report the changes in and revision of the confession of faith of the Presbyterian Church which were supposed to have brought the doctrines of the two churches into substantial harmony. The report of the committee was adopted by the general assembly and the plan of reunion and union was submitted to the presbyteries for their approval or disapproval, their action to be reported to the general assembly

of 1905. From the statement of the action of the presbyteries made to it, the general assembly of 1905 found that a constitutional majority of the presbyteries had voted approval of the plan, and declared that it had been constitutionally agreed to and adopted. The committee on fraternity and union was enlarged and continued for the purpose of assisting in the adjustment of the details of the union. A number of the commissioners caused their protest against all the action of the general assembly on the subject of the union to be spread upon the minutes. The enlarged committee met and conferred with the committee of the Presbyterian Church in the United States of America.

The bill in this case was filed on May 17, 1906, and alleged that the general assembly of the Cumberland Presbyterian Church would meet on that day in the city of Decatur, Illinois; that the committee on fraternity and union would report to it and that the general assembly would act on said report through the defendants as commissioners, and that they were threatening to and would effect and consummate the unlawful and unconstitutional merger, absorption and destruction of the said Cumberland Presbyterian Church. It is the action of the committee in making any report for the purpose of bringing the question of the union of the churches before the general assembly, and the action of the general assembly in taking any further proceedings to consummate the proposed union, either by receiving or acting on such report, or by any motion or resolution offered for the purpose of consummating such union or declaring it an accomplished fact, or in any other way, which the bill seeks to enjoin. The bill alleges that all the proceedings of the general assembly and its committees and of the synods and presbyteries are unlawful and void, because in all such proceedings the general assembly, synod and presbyteries have exceeded the authority vested in them by the constitution and organic law of the Cumberland Presbyterian Church, and it sets forth the provisions

of the constitution, and points out in detail the alleged total want of jurisdiction as well as the claimed fatal irregularities in the proceedings.

A court of chancery has no jurisdiction of the subject matter of this controversy. The object of the bill is to have a court of chancery, by its process, assume control of the action of an ecclesiastical tribunal, declare the extent of its jurisdiction, examine the regularity of its proceedings and revise its judgments. The civil courts deal only with civil or property rights. They have no jurisdiction of religious or ecclesiastical controversies. Our constitution says: "The free exercise and enjoyment of religious profession and worship, without discrimination, shall forever be guaranteed." Such freedom of religious profession and worship cannot be maintained if the civil courts may interfere in matters of church organization, creed and discipline, construe the constitution, canons or rules of the church and regulate and revise its trials and the proceedings of its governing bodies. (*Chase* v. *Cheney,* 58 Ill. 509; *Ferraria* v. *Vasconcelles,* 23 id. 456; *Kuns* v. *Robertson,* 154 id. 394; *Watson* v. *Jones,* 13 Wall. 679; *Gartin* v. *Peirick,* 5 Bush. 110.) The civil courts afford no remedy for any abuse of ecclesiastical authority which does not violate a civil or property right. Church tribunals ought to perform their functions honestly, impartially and justly, with due regard to their constitutional powers, sound morals and the rights of all who are interested; but if tyranny, force, fraud, oppression or corruption prevail, no civil remedy exists for such abuse except where it trenches upon some property or civil right. The ordinary courts have no cognizance of the rules of a religious organization or other voluntary association, and cannot consider whether they have been rightly or wrongly applied.

The church, as such, owns no property. It has never been incorporated but is a voluntary association. There are a large number of churches and congregations for whose

use property is held in trust, and the bill mentions a number of boards which have property under their control and management. Whether or not these boards are incorporated, except the James Millikin University, which is an Illinois corporation, or in what way or subject to what trusts the property is held, is not alleged, except that the property is held for the teaching and preaching of the doctrines contained in the confession of faith of the Cumberland Presbyterian Church. There is no allegation setting forth any deed, devise, declaration of trust or gift of any property, or any clause therein or the terms thereof, whereby it can be seen that the proposed union would defeat its purpose. There is no statement whereby it appears that the complainants, or any of those they represent, have an interest in any property which will be in any way affected by the proposed union. It is not alleged that any action is proposed to be taken which will interfere with the management and control of the property of the various churches, boards, schools and other institutions of the Cumberland Presbyterian Church by the boards of trustees or other managers now in control thereof, and of their successors appointed in accordance with the trusts upon which they are held. We do not find that any property right is directly involved or can be directly affected by the proposed action of the general assembly which it is sought to enjoin.

This proposed action was still pending in the general assembly, undetermined, when the bill was filed. It may well be doubted whether the proceedings of an ecclesiastical body can in any event be controlled by injunction while the matter is still *in fieri.* But without regard to this question, the case stated in the bill was not within the jurisdiction of a court of chancery and the demurrer to the bill was therefore properly sustained.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*