534 P.2d 1235 (1975)
Paul L. MITCHELL et al., Plaintiffs-Appellants,
v.
ALLSTATE INSURANCE COMPANY, Defendant-Appellant,
and
David D. Leonard et al., Defendants-Appellees.
No. 74-352.
Colorado Court of Appeals, Div. III.
April 29, 1975.
Isaac H. Kaiser, Denver, for plaintiffsappellants.
Burnett, Horan & Hilgers, William P. Horan, Denver, for defendant-appellant.
*1236 Yegge, Hall & Evans, Eugene O. Daniels, Denver, for defendants-appellees, David D. Leonard and Margaret E. Leonard.
Dosh, DeMoulin, Anderson & Campbell, Laird Campbell and Glenn T. Kray, Denver, for defendant-appellee, Farmers Ins. Group.
Selected for Official Publication.
SILVERSTEIN, Chief Judge.
Plaintiffs (the Mitchells) sued David Leonard and his mother Margaret Leonard to recover damages arising from an accident in which the Mitchells' car was struck by an automobile owned by Margaret and driven by David. Since a dispute arose as to whether Mrs. Leonard's insurance carrier, Farmers Insurance Group (Farmers) or the Mitchells' carrier, Allstate Insurance Company (Allstate), was liable for damages under their respective policies, the Mitchells sought a declaratory judgment to settle that issue. This issue was tried separately in a trial to the court, which entered judgment in favor of Farmers and held that Allstate was required to afford coverage under the uninsured motorist provision of its policy. A. C.R.C.P. 54(b) order having been entered, Allstate and the Mitchells appeal from that judgment.
It is admitted that David had taken his mother's car without permission and therefore did not qualify as an additional insured under the Farmers policy. However, Allstate asserted that David's parents were negligent in allowing David to obtain possession of the automobile, and that this negligence was a proximate cause of the accident, rendering the Farmers policy applicable to the claims of the Mitchells. Farmers denied that David's parents were negligent, and the trial court found that the parents were not negligent. On appeal Allstate contends the evidence clearly established negligence. We disagree, and affirm the judgment.
The following pertinent facts are all undisputed. The Leonard household consisted of Margaret as head of the household; her husband, now deceased, and very ill at the time of the accident; David, who was 19 on the date of the accident, May 14, 1972; and a 16-year-old son, Michael. The family owned two 1963 Mercury automobiles. Both were registered in Margaret's name; however, one was used exclusively by Michael and the other by Margaret.
David was mentally retarded and had been institutionalized from the time he was seven until shortly after his eighteenth birthday, when he was discharged to his home because the institution was badly crowded and other children in worse condition than David needed the care. David was not a licensed driver and, because of his condition, never could be. Some time prior to his discharge, when home on a visit, David had taken his father's car (which had been sold some time prior to the events pertinent here) and driven it a few blocks before getting stuck in some mud. David was severely reprimanded and appeared to react favorably to the scolding; however, his mental processes varied from day to day. Thereafter, his father hid the one set of keys to the car, usually under his pillow at night. The Leonards always kept only one set of keys for each car.
Two months before the instant accident David crept into his mother's room while she was asleep, stole her car keys from her purse, drove off in her car, and was involved in an accident. Mrs. Leonard thereupon decided she needed help with David, and was in the process of getting him admitted to a Halfway House when the May 1972 accident occurred.
Subsequent to the prior accident, the 1963 Mercury here involved was bought for Michael's use and, though registered in the mother's name, was driven exclusively by Michael. Margaret kept her own keys carefully hidden following the first accident, using various hiding places. She warned Michael to keep his keys as far from David as he could, and to keep them out of sight where David could not get them. From time to time she spoke to Michael about his keys and was assured that he was being careful with them.
*1237 The night before the accident Michael went to bed first, then David and then Margaret. Neither Margaret nor Michael heard anything during the night, but when Margaret arose she saw Michael's car was missing. She found Michael still asleep and David missing and promptly reported the situation to the police. Before the police could locate the car, the accident occurred. It developed that during the night David had gone into Michael's room and had found and removed the keys from a pocket in Michael's pants, which were lying on the floor next to Michael's bed.
The law is well established that a parent is not liable for the torts of his child merely because of that relationship. Horton v. Reaves, Colo., 526 P.2d 304. However, when a child has a known propensity to commit a potentially harmful act, then the parent has a duty to use reasonable care to prevent the child from causing such harm where the parent knows or should know of the propensity and has the ability and opportunity to control the child. See Horton v. Reaves, supra; Restatement (Second) of Torts § 316; and 59 Am.Jur.2d Parent and Child § 134.
In applying that law to this case, appellant relies on Gossett v. Van Egmond, 176 Or. 134, 155 P.2d 304, in which a mentally incompetent son took his father's car without permission and had an accident. However, in that case the court stated, "The negligence of the [father] consisted in failing to take any affirmative measures to prevent the use of the car by his incompetent son."
In the present case, however, affirmative measures were taken by the mother, and the determinative issue becomes whether such measures were adequate under the circumstances to comply with her duty of due care. That issue is for the trial court as the trier of fact. As stated in Hipps v. Hennig, 167 Colo. 358, 447 P.2d 700:
"[T]he issues of negligence and proximate cause are to be resolved by the trier of the fact, and . . . upon review we must view the evidence in the light most favorable to the party in whose favor the trier of the fact resolved the inferences to be drawn from the evidence. Only in the clearest cases where the facts are undisputed and reasonable minds could draw but one inference from them can this Court reach a conclusion of what constitutes reasonable care or proximate cause different from the one reached by the trier of the fact."
The trial court determined that the mother had used due care, and since more than one inference can be drawn from the facts, and the conclusion of the trial court finds support in the evidence, it will not be disturbed. Thiele v. Colorado, 30 Colo.App. 491, 495 P.2d 558.
Negligence consists of a failure to observe reasonable standards of care which the circumstances of the particular situation require, and the liability for one's conduct must be determined in the light of what was apparent at the time, not what is obvious in hindsight. McMillan v. Hammond, 158 Colo. 40, 404 P.2d 549; Franklin v. Nolan, 28 Colo.App. 229, 472 P.2d 166.
Judgment affirmed.
SMITH and RULAND, JJ., concur.