Ben F. Pfeifer et al., Plaintiffs-Appellants, v. The Christian Science Committee on Publications For The State of Illinois et al., Defendants-Appellees.

(No. 60938; 

First District (1st Division)—August 18, 1975.

Ben F. Pfeifer, *pro se*.

Richard M. Calkins and Donald L. Metzger, both of Burditt and Calkins, of Chicago, for appellees.

Mr. JUSTICE EGAN delivered the opinion of the court:

The plaintiff, Ben F. Pfeifer, filed a complaint against certain members of the Christian Science Committee on Publications for the State of Illinois, all members of the "[t]hree largest Christian Science Churches in Illinois," and certain members of the executive committee of the Christian Science Association of the pupils of Ralph W. Cessna. The complaint alleged that the plaintiff was a member in good standing in the Christian Science Church; that Ralph W. Cessna advertised in the Christian Science Journal as a Christian Science practitioner and teacher of genuine Christian Science class instruction in the only method approved by the church manual, which was revised by Mary Baker Eddy and "is the only law for government of the Christian Science movement"; that the manual imposed on the Committee on Publications the duty to correct "impositions on the public in regard to Christian Science, injustices done Mrs. Eddy or members of the church by the daily press,

by periodicals or circulated literature of any sort"; that Mr. Cessna's teachings "seriously departed from the church tenets set forth in the by-laws of the church which were departures from the teachings of Mary Baker Eddy"; and that the Committee on Publications and all the other defendants had conspired on a "continuing basis in condoning substitution of other than genuine Christian Science to flow through the church organization in Illinois through the Christian Science periodicals and allowing same to be corrupted * * * and in conspiring to allow stand [sic] substitution for genuine Christian Science in the name of 'the Association of the Students of Ralph W. Cessna, C.S.B.'."

The complaint prayed for an order that would "stop the practice of Christian Science in the State of Illinois until it can be clearly shown to be uniformly in accordance with the church by-laws" and would "stop the publications of the Christian Science Publishing Society from being distributed in the State of Illinois" until it could be clearly shown that they intended to conform to the church manual; and an order for "the lawful dissolution of the pupils of Ralph W. Cessna." The complaint was dismissed on the ground that the court lacked jurisdiction; the complaint failed to state a cause of action; and the complaint was barred by the statute of limitations.

■■ It is difficult to isolate and identify the cause of action the plaintiff purportedly alleges against any particular individual. But it is sufficiently clear that the heart of his complaint is an allegation that Ralph W. Cessna's religious teachings deviated from the tenets of the Christian Science faith as promulgated by Mary Baker Eddy. Thus, the court, if it retained jurisdiction, would be required to make a factual determination whether the teachings of Cessna were in conformity with those of Mary Baker Eddy. We agree with the trial court's conclusion that it lacked jurisdiction under the free exercise of religion clause of the First Amendment of the United States Constitution.

In 1871, in *Chase v. Cheney*, 58 Ill. 509, 535, the Supreme Court said, when considering an allegation that the disciplinary procedures of the Episcopal Church were improper:

> "We have no right, and, therefore, will not exercise the power, to dictate ecclesiastical law. We do not aspire to become *de facto* heads of the church, and, by construction or otherwise, abrogate its laws and canons. We shall not inquire whether the alleged omission is any offense. This is a question of ecclesiastical cognizance. This is no forum for such adjudication. The church should guard its own fold; enact and construe its own laws; enforce its own discipline; and thus will be maintained the boundary between the temporal and spiritual power."

The *Chase* case was cited in *Fussell v. Hail*, 233 Ill. 73, decided in 1908. In *Fussell*, the plaintiffs were members of the Cumberland Presbyterian Church who were opposed to the union of that church with the Presbyterian Church in the United States of America and sought a declaration that Cumberland could not, under the church constitution, consummate the union. The court said (233 Ill. at 77):

"A court of chancery has no jurisdiction of the subject matter of this controversy. The object of the bill is to have a court of chancery, by its process, assume control of the action of an ecclesiastical tribunal, declare the extent of its jurisdiction, examine the regularity of its proceedings and revise its judgments. The civil courts deal only with civil or property rights. They have no jurisdiction of religious or ecclesiastical controversies. Our constitution says: 'The free exercise and enjoyment of religious profession and worship, without discrimination, shall forever be guaranteed.' Such freedom of religious profession and worship cannot be maintained if the civil courts may interfere in matters of church organization, creed and discipline, construe the constitution, canons or rules of the church and regulate and revise its trials and the proceedings of its governing bodies. [Citations.] The civil courts afford no remedy for any abuse of ecclesiastical authority which does not violate a civil or property right. Church tribunals ought to perform their functions honestly, impartially and justly, with due regard to their constitutional powers, sound morals and the rights of all who are interested; but if tyranny, force, fraud, oppression or corruption prevail, no civil remedy exists for such abuse except where it trenches upon some property or civil right. The ordinary courts have no cognizance of the rules of a religious organization or other voluntary association, and cannot consider whether they have been rightly or wrongly applied."

In *Schweiker v. Husser*, 146 Ill. 399, 34 N.E. 1022, both the plaintiff and defendant claimed the right to be the pastor of a particular church in Chicago. The plaintiff was appointed by one faction of the religious association and the defendant by another. The case hinged in part on the power to select a place for the meeting of the General Conference of the association. The court said that the General Conference itself had that power and duty and that its conclusions had great weight, if not conclusive on civil courts. The court added that the conclusions of the Conference, the supreme, legislative, administrative and judicial body of the church, are not subject to review by courts of equity unless "they were manifestly violative of the constitution or the laws of the

Association, or in clear and palpable excess of its own jurisdiction * * *." (*146 Ill.* 399 at 425.) This quoted language in *Schweiker* is *obiter dicta,* because the court also held that the Conference had not exceeded its authority in selecting a place for its next meeting and, importantly, that the place at which the Conference was to hold its next session was "purely an ecclesiastical matter * * *. It stands upon substantially the same footing with matters of religious belief, of forms of worship, or of ecclesiastical discipline, and it seems to be the well settled rule that, in matters of that character, the decisions of the proper church tribunals are to be accepted as final, and are not subject to review by the civil courts." 146 Ill. at 428.

The dicta of *Schweiker* was relied on, in part, in *Serbian Eastern Orthodox Diocese for the United States of America and Canada v. Milivojevich,* 60 Ill.2d 477, 502-503, 328 N.E.2d 268, in which the Supreme Court reversed the trial court's ruling that the deposition and defrockment of a Serbian Orthodox bishop was proper. The basis of the Supreme Court's holding was that the bishop's removal was in violation of church procedure. The court noted that its decision required a review of the constitutions of the American-Canadian Diocese and the Serbian Orthodox Church; but that, while the constitutions deal primarily with religious matters, they contain clear and specific provisions concerning administrative autonomy concerning the relationship between the diocese and the Serbian Orthodox Church; and, we deem most important, that the constitutions could be considered without entangling the court in the determination of theological or doctrinal matters. 60 Ill.2d at 504-505.

In *Presbyterian Church in the United States v. Mary Elizabeth Blue Hull Memorial Presbyterian Church,* 393 U.S. 440, 21 L.Ed.2d 658, 89 S.Ct. 601, a dispute arose between the general church and two local churches in Savannah, Georgia, over control of the properties used by the local churches. Members of the local churches, in the belief that certain actions and pronouncements of the general church were violations of that organization's constitution and departures from the doctrine and practice in force at the time of their affiliations, voted to withdraw from the general church and to reconstitute the local churches as an autonomous Presbyterian organization. The ministers of the two churches renounced the general church's jurisdiction and authority over them. The commission established by the general church took over the local churches' property on behalf of the general church until new local leadership could be appointed. The churches filed suit to enjoin the general church from trespassing on the disputed property, title to which was in

the local churches. The general church moved to dismiss on the ground that civil courts were without power to determine whether the general church had departed from its tenets of faith and practice. The motion to dismiss was denied, and the case was submitted to the jury, which was instructed to determine whether the actions of the general church "amount to a fundamental or substantial abandonment of the original tenets and doctrines of the [general church], so that the new tenets and doctrines are utterly variant from the purposes for which the [general church] was founded." The jury returned a verdict for the local churches, and the trial judge enjoined the general church from interfering with the uses of the property in question. The Supreme Court of Georgia affirmed; and the United States Supreme Court reversed. It recognized, as had the Illinois Supreme Court in *Fussell* and *Schweiker*, that the courts may resolve some disputes involving church property but added (393 U.S. at 449):

> "But First Amendment values are plainly jeopardized when church property litigation is made to turn on the resolution by civil courts of controversies over religious doctrine and practice. If civil courts undertake to resolve such controversies in order to adjudicate the property dispute, the hazards are ever present of inhibiting the free development of religious doctrine and of implicating secular interests in matters of purely ecclesiastical concern. * * *
>
> * * * The civil court must first decide whether the challenged actions of the general church depart substantially from prior doctrine. In reaching such a decision, the court must of necessity make its own interpretation of the meaning of church doctrines. * * *. Thus, the departure-from-doctrine element of the Georgia implied trust theory requires the civil court to determine matters at the very core of a religion—the interpretation of particular church doctrines and the importance of those doctrines to the religion. Plainly, the First Amendment forbids civil courts from playing such a role."

■■ From all the authorities it is clear that religious disputes are an area the courts are reluctant to enter; and, if they must, they tread warily; but they will not venture into the quagmire of dogma. The plaintiff here makes no claim of a property right; hence, his position is even weaker than the local churches in *Presbyterian Church*, which was relied on by the trial court and is a clear answer to the plaintiff's argument. Just as in *Presbyterian Church*, this case depends on the resolution of the factual question of whether Cessna's teachings deviated from the

principles of Mary Baker Eddy. For these reasons we judge that the trial court correctly dismissed the complaint on the ground it lacked jurisdiction.

In view of our holding, it is unnecessary to pass on the other grounds ascribed by the trial court in its ruling. The order of the circuit court is affirmed.

Order affirmed.

BURKE, P. J., and GOLDBERG, J., concur.