**Charles and Beverly HOUSTON, individually and as next friend of Andrea Houston (a minor), Plaintiffs,**

**v.**

**MILE HIGH ADVENTIST ACADEMY; Rocky Mountain Conference of Seventh–Day Adventists; Mid–American Union of Seventh–Day Adventists; North American Division of Seventh–Day Adventists; General Conference of**

Seventh–Day Adventists; Steven L. Chaffin; Debbie Chaffin; Nathaniel Chaffin; Everett Schlisner; Cyril Myers; Roger Brodis; Rory Pullens; Maureen Sackett; and John and Jane Does I through X, Defendants.

Civ. A. No. 93–K–2462.

United States District Court,
D. Colorado.

March 22, 1994.

G. Michael Schuyler, Silver, Robinson Tobin & Schuyler, Denver, CO, for plaintiffs.

Franklin D. Patterson and Dwianne S. Ladendorf, Anderson, Campbell and Laugesen, P.C., Denver, CO, for Steven and Nathaniel Chaffin.

Melvin B. Sabey and Mark L. Sabey, Sabey, Johns, Ordelheide & Smith, P.C., Denver, CO, James H. Kizziar, Jr. and Robert Shaw–Meadow, San Antonio, TX, for all other defendants.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

This case is before me on two motions to dismiss under Fed.R.Civ.P. 12(b)(6). In the first motion, Defendants Mile High Adventist Academy, Rocky Mountain Conference of Seventh–Day Adventists, Mid–America Union of Seventh Day Adventists, North American Division of Seventh–Day Adventists, General Conference of Seventh–Day Adventists, Debbie Chaffin, Everett Schlisner, Cyril Myers, Roger Brodis, Rory Pullens and Maureen Sackett (collectively, the "Mile High Defendants") assert that all of the claims against them "arise from differences of opinion regarding the proper application of Biblical and religious doctrine in the operation of a Church school" which cannot be adjudicated by the courts. (Mile High Defs.' Br.Supp.Mot. Dismiss at 3.) In the second motion, Defendants Steven L. Chaffin and Nathaniel Chaffin argue that the nine claims against them must be dismissed on similar grounds and for other reasons.

For the most part, these motions are well-taken. While some claims may be potentially viable, they must be re-plead to achieve even minimal compliance with fundamental concepts of coherent pleading. The obtuse nature of the complaint suggests that the author considers the provisions of Fed.R.Civ.P. 8 to be merely the aspirational meanderings of a torpid establishment.

### I. Facts and Procedural History.

Plaintiffs Charles and Beverly Houston, individually and on behalf of their minor daughter, Andrea Houston, filed this action in state court on or about November 4, 1993. Defendants removed the action to federal court on November 22, 1993, on the basis of federal question jurisdiction. The complaint contains the following seventeen claims for relief, alleged against some or all Defendants: (1) negligence, (2) willful and wanton negligence, (3) negligence per se, (4) negligent misrepresentation, (5) negligent supervision, (6) negligent entrustment, (7) negligent hiring and retention, (8) negligent inflic-

tion of emotional distress, (9) outrageous conduct, (10) breach of contract, (11) deceit, (12) deceit based on concealment, (13) civil conspiracy, (14) breach of fiduciary duty, (15) assault, (16) battery,[1] and (17) punitive damages.

The prolix allegations of the complaint depict the saga generating this dispute. In the fall of 1990, the Houstons enrolled their daughter, Andrea, into high school at the Mile High Academy "for the purpose of obtaining for her an adequate and complete Biblical Christian education." (Compl. ¶ 3.1.) Primarily during her junior year, Andrea began having problems at school. It is alleged that one of her teachers, Mr. Myers, made offensive jokes and references of a sexual nature. Another teacher, Mr. Pullens, used inappropriate teaching materials, including sexually explicit passages from the books *Catcher in the Rye, Lord of the Flies, Of Mice and Men* and *Native Son.* Three teachers, Mrs. Sackett, Mr. Brodis, and Mrs. Chaffin, gave Andrea an "A" in their class, despite her poor attitude and performance and, in one instance, use of a "cheat sheet." In addition, Mr. Brodis allegedly allowed students at Mile High to use his home for sexual relations.

The Houstons also direct several claims against Nathaniel Chaffin, a student at Mile High, and his parents, Steven L. and Debbie Chaffin. They allege that, in May 1993, Nathaniel physically assaulted Andrea. They further claim that Mr. and Mrs. Chaffin knew of Nathaniel's sexually aggressive nature, drug use, threatening behavior and propensity to bring firearms to school, but did nothing to control their son.

According to the Houstons, all of these events were reported to Mr. Schlisner, the principal at Mile High, but he failed to take appropriate action. In addition, the Houstons complain that Mr. Schlisner permitted the religious values and discipline at Mile High to lapse by allowing students and teachers to engage in "sexual innuendo and sexual touching" and to use inappropriate language during school hours. Because the

school and its governing institutions did nothing to correct these and other problems, the Houstons maintain that they should be held liable for damages.

II. *Motions to Dismiss.*

A. *Compliance with Rule 8.*

■ To address these motions to dismiss adequately, one must determine, with some degree of precision, what the claims are in this case. The task is nearly impossible to perform on the face of this diffuse complaint. It consists of 42 single-spaced pages. The general allegations span 19 pages and contain 117 separate statements, some with subparts. Rather than consolidate allegations relating to more than one defendant, whole sections of the complaint are replicated. Numerous statements vaguely describe inappropriate activity conducted at Mile High without identification of actor, location or date.

The statements of the seventeen claims for relief fare no better. The Houstons insouciantly incorporate by reference all preceding allegations to support each claim, never referencing the specific facts or events upon which each is based. For example, for the initial three claims sounding in negligence and the claim for breach of fiduciary duty, the Houstons never identify what duty is owed. One cannot identify how, when or by whom the alleged false statements supporting their claims for negligent misrepresentation and deceit were made. The claims for negligent supervision, negligent entrustment, negligent hiring and retention, negligent infliction of emotional distress and outrageous conduct are not tied to any specific factual allegations. Although they assert a breach of contract claim, the word "contract" appears nowhere in the general allegations; there is no way to tell what the subject matter of the contract was, whether it was written or implied, or what its terms were. The claims for deceit and deceit based on concealment are duplicative. The latter simply states the former in the negative and contains the same list of fifty matters which certain Defendants purportedly represented Nathaniel Chaffin.

1. The motions at issue in this case do not address the assault and battery claims, alleged against

falsely or should have disclosed. The overt acts supporting the claim for civil conspiracy are not identified; one is compelled to surmise.

Rule 8(a)(2) of the Federal Rules of Civil Procedures requires every complaint filed in federal court to contain a "short and plain statement of the claim showing that the pleader is entitled to relief," enough to give the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957). While "[t]he pleading standard set by Rule 8(a)(2) does not change from case to case ... what constitutes sufficient notice to enable a defendant to formulate a responsive pleading does change from case to case." *Mountain View Pharmacy v. Abbott Lab.,* 630 F.2d 1383, 1386–87 (10th Cir.1980). The more complex the case, the more detail is required. *Id.*

Here, it is impossible to discern how the more than one hundred general allegations can be structured to support the required elements of each of the seventeen separate claims alleged in the complaint. Therefore, the requirement of Rule 8(a)(2) has not been met. Indeed, it has been ignored. *See National Commodity & Barter Ass'n v. Gibbs,* 886 F.2d 1240, 1245 (10th Cir.1989); *Ausherman v. Stump,* 643 F.2d 715, 716–717 (10th Cir.1981); *Mountain View Pharmacy,* 630 F.2d at 1387.

Nevertheless, despite the vague, repetitive and indistinct nature of the complaint, it is possible to conclude that a number of the claims are clearly without merit and must be dismissed. *See National Commodity,* 886 F.2d at 1244 (considering merits of dismissal under Rule 12(b)(6) despite noncompliance with Rule 8(a)(2)). As to the remainder of the claims, Plaintiffs will be permitted to file an amended complaint, "which outlines in clear, direct and understandable terms the precise factual allegations to support each essential element" of the remaining claims. *Id.* Any amended complaint so filed must also comply with Fed.R.Civ.P. 11, which requires the complaint to be "warranted by existing law or a good faith argument for the extension, modification or reversal of existing law."

**B. Constitutionally Barred Claims.**

The Mile High Defendants' central argument in support of their motion to dismiss is that the court is barred by the first amendment from adjudicating the dispute at issue in this case. Relying on the deposition of Mr. Houston, they argue that he has admitted that every claim against them is based on the Houstons' disagreement with their interpretation of religious doctrine and application of that doctrine at Mile High. The Houstons respond that this argument "completely ignores the overwhelming sexual improprieties and tortious conduct which occurred at Mile High Adventist Academy, and completely ignores consistent Colorado case law that does not allow such tortious conduct to be cloaked in terms of a "religious controversy" in order to avoid liability." (Pls.' Combined Resp. Br. at 8.)

■ The Houstons are correct that the first amendment does not insulate religious institutions from their tortious conduct. *See, e.g., Bear v. Reformed Mennonite Church,* 462 Pa. 330, 341 A.2d 105, 107–08 (1975). Nevertheless, where resolution of such a claim would require the court to determine the truth or falsity of a particular religious belief, *see United States v. Ballard,* 322 U.S. 78, 64 S.Ct. 882, 88 L.Ed. 1148 (1944), consider doctrinal or ecclesiastical questions, such as whether a religious doctrine departs from higher church standards, *see Pfeifer v. Christian Science Comm. on Publications,* 31 Ill. App.3d 845, 334 N.E.2d 876 (1975), or settle matters involving internal church procedure, *see Thomas v. Review Bd.,* 450 U.S. 707, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981), the first amendment prohibits an adjudication. *See generally* Ivy B. Dodes, Note, "*Suffer the Little Children* ...": *Toward a Judicial Recognition of a Duty of Reasonable Care Owed Children by Religious Faith Healers,* 16 Hofstra L.Rev. 165, 172 (1987).

Beginning with *Watson v. Jones,* 80 U.S. (13 Wall.) 679, 727, 20 L.Ed. 666 (1871), the Supreme Court has adhered to the principle, "founded in a broad and sound view of the relations of church and state under our sys-

tem of laws," that federal courts should not venture into purely ecclesiastical waters and are bound by the decision of the highest church authority recognized by the parties to the dispute. Since *Watson,* the Court has reaffirmed that this principle is compelled by the first amendment. *See Serbian E. Orthodox Diocese v. Milivojevich,* 426 U.S. 696, 709, 96 S.Ct. 2372, 2380, 49 L.Ed.2d 151 (1976); *Presbyterian Church v. Mary Elizabeth Blue Hull Memorial Presbyterian Church,* 393 U.S. 440, 450, 89 S.Ct. 601, 606, 21 L.Ed.2d 658 (1969); *Kedroff v. St. Nicholas Cathedral of the Russian Orthodox Church,* 344 U.S. 94, 116, 120–21, 73 S.Ct. 143, 154, 156–57, 97 L.Ed. 120 (1952).[2]

■ Courts may, however, decide property disputes involving religious institutions if they can be resolved under "neutral principles of law." The Supreme Court formally adopted this approach in *Jones v. Wolf,* 443 U.S. 595, 602–03, 99 S.Ct. 3020, 3025, 61 L.Ed.2d 775 (1979). *Jones* involved a property dispute between two factions of a congregation in Macon, Georgia. Under the neutral principles approach, if the court can resolve the dispute by examining church documents, taking "special care to scrutinize the document in purely secular terms, and not to rely on religious precepts," then the court "is constitutionally entitled to adopt neutral principles of law as a means of adjudicating a church property dispute." *Id.* at 604, 99 S.Ct. at 3026. If, however, "the interpretation of the instruments of ownership would require the civil court to resolve a religious controversy, then the court must defer to the resolution of that doctrinal issue by the authoritative ecclesiastical body." *Id.*

■ Considering *Watson* and *Jones,* I conclude that most of the allegations in this case are not the proper subject for judicial resolution and cannot support the claims for relief. Here, the Houstons allege, among other things, that Andrea "was subjected to an

inferior and substandard Biblical Christian education" (*see, e.g.,* Compl. ¶ 3.3), that "the acts of making sexual statements, including connotations, innuendoes and/or propositions about semen and gay sex, during the course of a Biblical Christian education constitutes . . . a deviation from acceptable Seventh Day Adventists fundamental doctrines," (*id.,* ¶ 3.20), and that the program at Mile High was in various ways inconsistent with the teachings and guiding principles of the Seventh Day Adventist Church, (*see, e.g., id.,* ¶¶ 3.55–3.61). Assuming that the doctrine of "neutral principles of law" could be applied to a dispute not involving property, which is doubtful, these allegations require one to determine whether the school and the Mile High Defendants have adhered to religious tenets. There are no neutral principles of law which could be applied to resolve this question under *Jones.* Moreover, there is no final determination by the highest ecclesiastical authority which would allow one to resolve these issues under *Watson.* Thus, my adjudication of whether Andrea was provided an adequate Biblical Christian education in accordance with the tenets of the Seventh Day Adventist church is barred by the first amendment.

### C. *Educational Malpractice Claims.*

■ Although the Mile High Defendants seek to characterize all the allegations raised in the above light, construing the complaint in the light most favorable to the Houstons as one must on a motion to dismiss, *see Williams v. Meese,* 926 F.2d 994, 997 (10th Cir.1991), other allegations concern educational, and not purely ecclesiastical, matters. For example, the Houstons claim that at least one of Andrea's teachers was not properly trained, that she was given high grades despite a poor attitude, that students were not properly supervised, that discipline was lax, that the school failed to provide

---

2. At least one commentator notes, however, that the Court "has never stated clearly on which clause [of the first amendment] it relies to define" the boundaries by which the government is limited in interfering in internal church disputes. *See generally* Angela C. Carmella, *Houses of Worship and Religious Liberty: Constitutional Limits to Landmark Preservation and Architectural Re-* view, 36 Vill.L.Rev. 401, 416–17 (1991). On one hand, the free exercise prong of the first amendment counsels against the government's interference with the practice of religion, whereas the establishment clause prevents government support as well as entanglement in religion. *Id.* at 417.

adequate instruction in secular areas, such as health, the functions of the human body, and proper exercise and health habits, and that it failed to foster logical thinking, intellectual creativity, academic excellence and social responsibility. The Houstons' claims of negligence, willful and wanton negligence, negligent misrepresentation, negligent supervision, negligent hiring and retention, negligent infliction of emotional distress, outrageous conduct, breach of contract, deceit, deceit based on concealment, and breach of fiduciary duty are apparently based on these allegations, as well as those relating to the school's failure to provide a religious education.

In sum, the claims founded on the above secular allegations can be fairly construed as one for educational malpractice. In *Tolman v. Cencor Career Colleges, Inc.*, 851 P.2d 203, 205 (Colo.App.1992), the Colorado Court of Appeals held that Colorado does not recognize a claim for educational malpractice. Noting that "[a]uthority from other states has consistently refused to recognize educational malpractice as a cognizable claim", the court reasoned:

> Whether to create a claim for relief for education malpractice is a question of law which, initially, requires determination by the court whether a duty runs from defendant to plaintiff. Initial resolution of the question of the existence of a duty is dictated by public policy and the conceivable workability of a rule of care in a given factual situation. Relevant considerations affecting whether to impose a duty of care include the likelihood of injury to plaintiffs, the magnitude of the burden of guarding against an injury, and the consequences of placing that burden on defendant.

> Since education is a collaborative and subjective process whose success is largely reliant on the student, and since the existence of such outside factors as a student's attitude and abilities render it impossible to establish any quality or curriculum deficiencies as a proximate cause to any injuries, we rule that there is no workable standard of care here and defendant would face an undue burden if forced to litigate its selection of curriculum and teaching

methods. Accordingly, as a matter of law, we decline to impose such a duty here and uphold the summary judgment refusing to recognize plaintiff's tort claims premised on educational malpractice entered by the trial court.

*Id.* at 205. The court went on to hold that claims sounding in breach of contract and deceit based on fraud could be viable if properly plead and proved. *Id.* at 206.

On further appeal, the Colorado Supreme Court affirmed the lower court's ruling as to the breach of contract and deceit claims. (The Court of Appeals' ruling on the educational malpractice issue was not appealed.) It noted, however, that such claims must be based on allegations "that educational institutions have failed to provide specifically promised educational services, such as a failure to offer any classes or a failure to deliver a promised number of hours of instruction." *Cencor, Inc. v. Tolman*, 868 P.2d 396, 399 (Colo.1994). On the other hand, "[c]ontract claims that in fact attack the general quality of educational experiences provided to students," which "in reality raise questions concerning the reasonableness of conduct by educational institutions in providing particular educational services to students—questions that must be answered by reference to principles of duty, standards of care, and reasonable conduct associated with the law of torts" are not cognizable. *Id.* at 398–99.

■ Here, the Houstons' claims for negligence, willful and wanton negligence, negligent misrepresentation, negligent supervision, negligent hiring and retention, negligent infliction of emotional distress, outrageous conduct, and breach of fiduciary duty based on the concept of educational malpractice are barred under *Tolman* as sounding in tort. Likewise, although they have alleged a breach of contract claim and two claims for deceit, these claims are not based on "specifically promised educational services," but simply attack in broad terms Andrea's educational experience at Mile High. Assuming that such contract theories even apply to a private secondary school such as Mile High, *see VanLoock v. Curran*, 489 So.2d 525 (Ala. 1986) (applying contract theory to relationship between student and institution as to

parochial elementary school), these claims are also deficient under *Tolman.*

### D. *Other Claims.*

#### 1. *Negligence Per Se for Violations of Title VII and Title IX.*

■ In addition to allegations concerning Mile High's conformity with fundamental religious tenets and the general quality of education offered there, the Houstons further maintain that Andrea was subjected to an atmosphere of sexual harassment at the school. The only claim which even touches on this issue, however, is the third claim for negligence per se. In this claim, the Houstons simply incorporate by reference all previous allegations of the complaint. Next, they state that "[a]t the time of the Defendants' conduct, representations, misstatements, omissions, actions and/or statements, there was in full force and effect both state and federal statutes including Title VII, Title IX and state civil rights laws." (Compl. ¶ 4.8.) Finally, they allege that Defendants violated these statutes and that they are within the class of persons that the statutes were intended to protect.

■ To prove their per se claim, however, the Houstons must show that (1) Defendants violated a statute, regulation or ordinance, (2) the violations proximately caused the alleged injuries, (3) the Houstons are members of the class intended to be protected by the law, and (4) the law was designed to protect the type of harm that they suffered. *Resolution Trust Corp. v. Ascher,* No. 92–B–424, 1994 WL 52687 at * 8 (D.Colo.Feb. 14, 1994). Their negligence per se claim fails under the first and third elements.

First, Title VII does not apply in this instance. It applies to discrimination in employment. 42 U.S.C. 2000e–2 (defining unlawful employment practices by an employer). The Houstons have not alleged any employment relationship exists between them and Defendants. Furthermore, consequential damages are only recoverable under Title VII for intentional conduct. 42 U.S.C.

§ 1981a(a). The Houston's attempt to extend Title VII's coverage to include damages for negligent conduct contravenes the language of the statute and otherwise fails to state a claim. *See Sacks v. Reynolds Sec., Inc.,* 434 F.Supp. 37, 39 (D.D.C.1977), *aff'd,* 593 F.2d 1234 (D.C.Cir.1978) (no negligence per se claim based on Title VII violation).

■ Likewise, their reliance on Title IX is unavailing. This statute prohibits discrimination on the basis of sex in "any education program or activity receiving Federal financial assistance," and excludes religious institutions to the extent the statute is inconsistent with its religious tenets. 20 U.S.C. § 1681(a). Here, the Houstons have not alleged that Mile High receives federal funding, a necessary prerequisite to Title IX coverage. In addition, like Title VII, a plaintiff may recover damages for the violation of Title IX only for intentional violations. *See Franklin v. Gwinnett County Public Schools,* —— U.S. ——, ——, 112 S.Ct. 1028, 1037, 117 L.Ed.2d 208 (1992). Finally, since both Title VII and Title IX provide a specific means of enforcing legal duties unknown at common law, the remedies under these statutes are exclusive. *See Henry v. Kemp,* 829 P.2d 505, 506 (Colo.App.1992). The Houston's attempt to recover such damages under a negligence per se theory is therefore improper.[3]

#### 2. *Civil Conspiracy Claim.*

■ In their motion to dismiss, Defendants Steven L. and Nathaniel Chaffin argue that the Houstons have failed to state a claim for civil conspiracy to commit sexual harassment. Under Colorado law, to state a conspiracy claim, the plaintiff must allege the existence of "(1) two or more persons, (2) an object to be accomplished, (3) an agreement on the object or course of action, and (4) one or more overt acts and (5) damages as a proximate result thereof." *Schneider v. Midtown Motor Co.,* 854 P.2d 1322, 1326 (Colo.App.1992). The Chaffins contend that the Houstons have failed to identify any factual basis showing an agreement between the

---

**3.** The negligence per se claim is also predicated on unidentified state civil rights laws. By not specifying the statute, regulation or ordinance upon which they rely, they fail to state a claim under *Resolution Trust Corp. v. Ascher* as to any state law violations.

parties, and that the conclusory allegations are insufficient. I agree.

Here, the Houstons merely recite the essential elements of a claim for conspiracy, without identifying any specific overt acts or any evidence of an agreement between the parties to commit sexual harassment. Such conclusory allegations do nothing to inform Defendants of the nature of this claim. Therefore, the Houstons fail to state a claim for civil conspiracy to commit sexual harassment.[4]

### 3. Negligent Supervision, Negligent Infliction of Emotional Distress and Negligent Entrustment.

The Chaffins also contend that the Houstons have failed to plead a cognizable claim against Steven Chaffin, Nathaniel's father, for negligent supervision, negligent infliction of emotional distress or negligent entrustment. Because these claims are so generally plead, the Chaffins surmise they arise out of the Houston's allegation that Nathaniel assaulted Andrea, made derogatory statements about her, had improper contact with other girls, and brought a gun to school. Even assuming these events to have occurred, the Chaffins argue that Steven Chaffin cannot be held liable in loco parentis for Nathaniel's actions because Nathaniel was not under his father's supervision at the time.

Colorado law supports this conclusion. "The law is well established that a parent is not liable for the torts of his child merely because of that relationship." *Mitchell v. Allstate Ins. Co.,* 36 Colo.App. 71, 534 P.2d 1235, 1237 (1975). Furthermore, the gist of both the torts of negligent entrustment and negligent supervision is the parent's knowledge of the potential for harm and an ability to control. *Lahey v. Benjou,* 759 P.2d 855, 857 (Colo.App.1988). The reported cases imposing liability for these torts have involved some sort of physical injury to the plaintiff. *See, e.g., Horton v. Reaves,* 186 Colo. 149, 526 P.2d 304 (1974); *Lahey,* 759

P.2d 855; *Mitchell,* 534 P.2d 1235. Physical injury is also an essential element of a claim for negligent entrustment under the Restatement formula adopted in Colorado. *See Casebolt v. Cowan,* 829 P.2d 352, 357 (Colo. 1992). Accordingly, because these torts occurred during school hours, at times when Mr. Chaffin could not possibly have supervised his son, and the Houstons have not alleged any physical injury to Andrea, they fail to state a claim against him based on Nathaniel's actions.

### 4. Punitive Damages.

Finally, the Chaffins' note that, under Colorado law, a request for punitive damages is not a separate, actionable claim. *Pulliam v. Dreiling,* 839 P.2d 521, 524 (Colo. App.1992). "An award of punitive damages can be entered only after awarding damages in conjunction with an underlying and successful claim for actionable damages." *Id.* Therefore, the seventeenth claim for punitive damages is dismissed with leave to replead this element of damages in connection with those claims in which they are appropriately recoverable, but not as a separate claim for relief.

### 5. Dismissal as to Certain Parties.

Finally, I note that Mr. and Mrs. Houston have asserted all of the claims in their individual capacities as well as in their capacity as next friend of Andrea. There are no allegations in the complaint which would support a finding that either was personally damaged or otherwise has standing. Therefore, I dismiss them in their individual capacities.

Likewise, the Houstons have alleged a number of claims against teachers at Mile High and its principal, Mr. Schlisner, without specifying how they can be held individually liable. Nothing in the complaint supports such liability. Therefore, I dismiss the complaint with prejudice as to Defendants Schlisner, Myers, Brodis, Pullens and Sackett. Defendant Debbie Chaffin, Nathaniel's mother and a teacher, registrar and secretary at

---

4. In addition, because the complaint fails to identify any conduct by Mr. Chaffin which could subject him to the claims for negligence, willful

and wanton negligence and outrageous conduct, those claims are also dismissed as to him.

Mile High, must likewise be dismissed for the reasons stated above and in the preceding discussion in relation to the allegations concerning Nathaniel.

### III. *Conclusion.*

IT IS ORDERED THAT the Mile High Defendants' motion to dismiss is GRANTED to all claims based on allegations asserting that Mile High was not operated in conformity with religious teaching. In addition, claims based on a theory of educational malpractice are dismissed. These include the claims for negligence, willful and wanton negligence, negligent misrepresentation, negligent supervision, negligent entrustment, negligent hiring and retention, negligent infliction of emotional distress, outrageous conduct, breach of contract, deceit, deceit based on concealment and breach of fiduciary duty.

IT IS FURTHER ORDERED THAT Steven L. and Nathaniel Chaffin's motion to dismiss the negligence per se, civil conspiracy, negligent supervision, negligent infliction of emotional distress, negligent entrustment, negligence, outrageous conduct, willful and wanton conduct and punitive damages claims is GRANTED.

IT IS FURTHER ORDERED THAT Mr. and Mrs. Houston are DISMISSED in their individual capacities, and the claims against Defendants Debbie Chaffin, Everett Schlisner, Cyril Myers, Roger Brodis, Rory Pullens and Maureen Sackett are DISMISSED.

Finally, IT IS FURTHER ORDERED THAT the complaint is STRICKEN. Any amended complaint must be plead in strict conformity with Rule 8 and Rule 11 and must be filed on or before April 20, 1994 or this civil action will be dismissed with prejudice.