Jae-Woo Cha

v.

Korean Presbyterian
Church et al.

August 23, 2000

Case No. (Law) 188601

BY JUDGE JONATHAN C. THACHER

This matter came before the Court on July 21, 2000, on Defendants' Chi Whan Kim, Taek Yong Kim, Yong Ho Kim, David Kwang Soo Han, Do Sik Ko, and Jung Kook Kim (the "Individual Defendants") Motion to Dismiss for Lack of Subject Matter Jurisdiction. For the reasons set forth below, this case is dismissed.

*Factual Background*

In his Motion for Judgment, Plaintiff avers that he was employed by the Korean Presbyterian Church of Washington (Church) under a two-year employment contract beginning in October 1997. According to Plaintiff, in October 1999, the Church renewed his employment agreement for a term of one year. Plaintiff further avers that in October 1999 he attended a meeting with members of the Church's congregation in which members discussed their belief that an independent auditor should be hired to investigate possible financial improprieties by several Church leaders and members involving Church funds.

Plaintiff alleges that after he agreed with other Church members that an independent auditor should be hired and the Church's financial records disclosed, several of the Individual Defendants threatened that he would be fired if he did not change his position. When Plaintiff refused to comply, several of the Individual Defendants allegedly began conspiring to remove Plaintiff from his position. On December 5, 1999, a number of the Individual Defendants allegedly misrepresented to meetings of the Church's Deacons and the Church's Elders' Committee that Plaintiff had borrowed funds from Church members. Shortly thereafter, on December 11, 1999, the Church's Elders' Committee purportedly voted to terminate Plaintiff's employment.

Plaintiff's Motion for Judgment contains three counts. According to Count I, the Church wrongfully terminated his employment in order to conceal the financial improprieties and punish Plaintiff for advocating disclosure of Church financial records. In Count II, Plaintiff alleges that the Individual Defendants tortiously interfered with his contractual rights by making or encouraging the making of statements to the Church's Elders' Committee that plaintiff had borrowed money from Church members in an effort to induce the Church to terminate Plaintiff's employment. Finally, in Count III, Plaintiff claims that Defendants Do Sik Ko and Chi Whan Kim defamed him by making statements regarding Plaintiff's borrowing of money from Church members at the December 5, 1999, Deacons' and Elders' Committee meetings.

## Analysis

This Court lacks subject matter jurisdiction over this case. Both the First Amendment to the United States Constitution, as applied to the States by the Fourteenth Amendment, and the Virginia Constitution Article I, § 16, contain free exercise and establishment clauses. The free exercise clause protects against government interference with the practice of religion. The establishment clause prevents excessive government support of and entanglement with religion. *See Houston v. Mile High Adventist Academy*, 846 F. Supp. 1449, 1455 (D. Colo. 1994).

Civil courts are prohibited from interfering in ecclesiastical disputes where questions of faith or doctrine are involved. See *Serbian Eastern Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 709, 96 S. Ct. 2372, 49 L. Ed. 2d 151; *Reid v. Gholson*, 229 Va. 179, 187, 327 S.E.2d 107 (1985) ("The constitutional guarantees of religious freedom have no deeper roots than in Virginia, where they originated, and nowhere have they been more scrupulously observed."). Where, however, a case may be decided by neutral

principles of law, without reference to principles of faith and doctrine, church members may resort to the civil courts to protect their rights. *See Reid*, 229 Va. at 188.

In *Reid*, the Supreme Court of Virginia explained that a decision by a governing body or internal tribunal of an hierarchical church is treated as an ecclesiastical determination constitutionally immune from review by a civil court. Internal government disputes in hierarchical churches are inextricably linked to questions of faith and doctrine and are, therefore, not properly subject to judicial review. See *id.* at 189. In contrast, churches with a congregational structure are governed by the will of a majority of the members analogous to a democratic system of government, so ecclesiastical law and internal tribunals are absent. Internal procedures in congregational churches are subject to review by civil courts because neutral principles of law may be applied. See id.

The Presbyterian Church is widely recognized as an hierarchical organization. See e.g., *Jones v. Wolf*, 443 U.S. 595, 607, 61 L. Ed. 2d 775, 99 S. Ct. 3020 (1979); *Presbyterian Church v. Mary Elizabeth Blue Hull Mem. Presbyterian Church*, 393 U.S. 440, 442, 21 L. Ed. 2d 658, 89 S. Ct. 601 (1969). The Church in this case is governed by committees known as the Session and the Elders' Committee composed of senior members of the Church. Each of the Individual Defendants in this case held a position of power within the Church. Three of the Defendants were members of the Elders' Committee, two were Deacons, and one was the Senior Pastor. Therefore, as an hierarchical organization, the Church's tribunals and internal government decisions are not reviewable by this Court.

As to Count I, the wrongful termination count, Plaintiff contends that the existence of his employment contract permits this court to hear the claims in this case without involving itself in ecclesiastical concerns. A civil court may review a church's contract where neutral-principles of law are determinative. See *Jones v. Wolf*, 443 U.S. 595, 606, 61 L. Ed. 2d 775, 99 S. Ct. 3020 (1979). Freedom to select clergy without government interference, however, is given constitutional protection where no improper methods of choice are proven. *Kedroff v. St. Nicholas Cathedral*, 344 U.S. 94, 116, 97 L. Ed. 120, 73 S. Ct. 143 (1952). The United States Supreme Court has, in dictum, mentioned an exception that would permit a civil court to review acts of church tribunals in cases of fraud or collusion. See *Serbian Eastern Orthodox*, 426 U.S. at 712. However, even if Plaintiff's Motion for Judgment alleges facts sufficient to support a finding of fraud or collusion, this Court is unaware of and the parties do not present any cases in which the "fraud or collusion" exception has been applied.

Plaintiff in this case would ask the Court to inquire into the reasons for Plaintiff's termination, not merely whether Plaintiff in fact had an employment contract with the Church. Because this Court is not permitted to engage in review of the Church's faith-based or internal government decisions, Plaintiff's wrongful termination claim must be dismissed.

With respect to Counts II and III, the tortious interference and defamation claims, the wrongs alleged arise from discussions and decisions made during a Deacons' meeting and an Elders' Committee meeting. At a Deacons' meeting with 108 of the Church's 164 Deacons in attendance, Defendant Ko Do Sik allegedly accused Plaintiff of borrowing money from Church members and not returning the money. As a result of this meeting, the Elders' Committee convened to discuss the allegations against Plaintiff, subsequently voting to terminate his employment.

As with the wrongful termination claim, hearing the merits of Plaintiff's tortious interference and defamation claims would require this Court to delve into the "religious thicket" of faith and doctrinal questions related to internal church governance. See *Reid*, 229 Va. at 189. Whether the statements by Individual Defendants regarding Plaintiff's borrowing of funds from members were true or were merely an attempt to induce the Church to remove Plaintiff from his position, this Court is prohibited from reviewing the meetings and decisions of the Church's Committees to terminate a pastor. See e.g., *Minker v. Baltimore Annual Conference*, 282 U.S. App. D.C. 314, 894 F.2d 1354, 1359 (D.C. Cir. 1990) ("Any inquiry into the Church's reasons for asserting that [Plaintiff] was not suited for a particular pastorship would constitute an excessive entanglement in its affairs."); *Natal v. Christian and Missionary Alliance*, 878 F.2d 1575, 1578 (1st Cir. 1989) (inquiry into the reasons for minister's discharge would plunge court into a "maelstrom of Church policy, administration, and governance."). Reviewing these aspects of the meetings would impermissibly inject this Court into the internal governance of the Church.

At oral argument, Plaintiff also argued (as does Defendant Church in both its Answer and Cross-claim) that the actions taken by the Individual Defendants giving rise to the defamation and tortious interference claims were without the authority or consent of the Church. Therefore, Plaintiff argues that constitutional freedoms of religion are not implicated and the claims against the Individual Defendants do not require dismissal.

Determining whether the Individual Defendants acted with the authority of the Church would require this Court to interpret religious, faith-based documents relating to the internal governance of the Church. This Court is not

the proper tribunal to interpret such documents. As the United States Supreme Court noted:

> Each of these large and influential bodies . . . [including Presbyterian churches] has a body of constitutional and ecclesiastical law of its own, to be found in their written organic laws, their books of discipline, in their collection of precedents, in their usage and customs, which as to each constitute a system of ecclesiastical law and religious faith that tasks the ablest minds to become familiar with. It is not to be supposed that the judges of the civil courts can be as competent in the ecclesiastical law and religious faith of all these bodies as the ablest men are in reference to their own. It would therefore be an appeal from the more learned tribunal in the law which should decide the case, to one which is less so.

*Serbian Eastern Orthodox*, 426 U.S. at 715, n. 8 (quoting *Watson v. Jones*, 80 U.S. 679, 729, 20 L. Ed. 666 (1871)).

In its Answer and Grounds of Defense, the Church explains that the authority of the Session, Deacons, Elders, ministers, and other officials are derived from the Book of Church Order (BCO) as published by the Presbyterian Church of America. The facts giving rise to the allegations in this case occurred during meetings of Church leaders. This court is constitutionally prohibited from reviewing whether Deacons or Elders complied with or had authority to act under the BCO, a religious document. Such a review would require this Court to both interpret the BCO and make faith-based determinations concerning the roles and scope of authority of Church leaders. As noted above, this Court is not permitted to engage in faith-based determinations or determinations relating to Church governance. Therefore, Plaintiff's claims against the Individual Defendants for tortious interference and against Do Sik Ko and Chi Whan Kim for defamation must be dismissed.